203 N.J. Super. 160 (1985)
496 A.2d 366
PAUL EDGERTON, PLAINTIFF-RESPONDENT,
v.
ELIZABETH EDGERTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1985.
Decided April 12, 1985.
As Corrected April 17, 1985.
*162 Before Judges MICHELS, PETRELLA and BAIME.
Susan L. Goldring argued the cause for appellant (Frunzi and Goldring, attorneys).
*163 Lee M. Hymerling argued the cause for respondent (Archer & Greiner, attorneys).
The opinion of the court was delivered by PETRELLA, J.A.D.
Defendant-appellant Elizabeth Edgerton appeals from the denial by the Chancery Division, Family Part, of her motion brought under R. 4:50-1(f) in which she had sought to modify that portion of a property settlement agreement incorporated in a final judgment of divorce dealing with inherited assets and equitable distribution. Her inherited assets had been considered subject to equitable distribution in the agreement. Defendant argued that because the equitable distribution statute (N.J.S.A. 2A:34-23) had been amended to remove inherited property from distribution and that change had been declared retroactive by subsequent court decision in Gibbons v. Gibbons, 86 N.J. 515, 524 (1981), she was entitled to modify the judgment. We reverse the denial of her motion and remand.
The parties to this appeal were married on June 17, 1967. Two children were born of that union, one in 1968 and the second in 1973. The parties separated in September 1979. After negotiations through their respective attorneys,[1] a property settlement agreement dated December 21, 1979 was executed which included provisions regarding the distribution of assets. For present purposes we need not go into all the provisions of the agreement. The following provisions outline how defendant's inherited property was distributed. The inherited property was listed in the agreement and treated as a marital asset subject to equitable distribution. Although under the agreement defendant was to retain her inherited undivided 1/6 interest in the assets of Stallcup Estate Farms in Missouri, variously estimated as having a value of between $180,000 *164 and $1,051,175, she became obligated to make a cash payment to plaintiff. Defendant likewise was allowed to retain her inherited interest in the estate or trust created by Bethel L. Clay and in the estate of Cyrus Anderson. Defendant claimed that her income from the Anderson inheritance was $6,000, and that her income from the Clay inheritance was $20,000. Plaintiff claimed that total cash receivable from the wife's inheritances was actually $65,000. However, defendant asserted that $35,000 of this amount was received after the agreement was signed, and a major portion thereof was used to purchase a house for herself and the children.
The agreement obligated defendant to pay plaintiff $150,000, payable $20,000 upon signing of the agreement, and the balance within five years unless the wife's interest in this Missouri land was sold or transferred, in which event plaintiff was to receive 1/2 of any consideration received by defendant as the result of such sale or transfer. There was no interest on the payments for the first three years, but thereafter any outstanding balance was to bear interest at 9% per annum. In addition, this debt to plaintiff was to be secured by a mortgage on the land in question or other secured instrument acceptable to plaintiff.
On December 31, 1980, Assembly Bill No. 1229 was enacted into law as L. 1980, c. 181. The effect of this statute was to amend N.J.S.A. 2A:34-23 to exclude from eligibility for equitable distribution property acquired by either spouse during marriage by gift (other than interspousal gift), devise or bequest.[2] Prior thereto inherited property was considered subject to equitable distribution under our court decisions. See Painter v. Painter, 65 N.J. 196, 214 (1974). On July 8, 1981 our Supreme Court held that the 1980 amendment to N.J.S.A. 2A:34-23 applied retroactively to "all other cases presently on *165 direct appeal or in which a final judgment has not been entered." Gibbons v. Gibbons, supra, 86 N.J. at 524.
The divorce complaint had been filed by plaintiff herein on March 10, 1981. On July 27, 1981, nineteen days after the decision in Gibbons an "Amendatory Agreement" was entered into which had language acknowledging the parties' prior agreement and that it was binding on them, except as modified by the amending agreement. The amending agreement essentially provided that commencing July 1981, child support would be increased to $1,350 per month.
On the same day that the amending agreement was finalized a hearing was held in what was essentially an uncontested divorce proceeding. The proofs presented were that the plaintiff was entitled to a "no-fault" divorce and that the parties to the action had freely and voluntarily entered into the property settlement agreement and the amendatory agreement.
The transcript of the July 27, 1981 divorce hearing does not indicate that anyone called to the judge's attention that the agreement had included inherited property. There was likewise no mention of the then six month old amendment to the statute or to the then 19 day old decision in Gibbons v. Gibbons, supra. Indeed, the judge said:
Mrs. Edgerton, do you understand that I haven't seen the agreement or the amendment and I'm not making any determination as to whether or not it is a fair agreement or sufficient agreement. Do you understand that?
The witness answered affirmatively and the uncontested divorce proceeded. The judge directed that counsel include in the judgment that "the Court took no testimony and made no findings as to whether the agreement was adequate or sufficient."
The actual divorce judgment was not signed until August 13, 1981. It included a finding that the agreement had been entered into voluntarily, as well as a recital that the court did not "rule upon the merits of said Agreements."
*166 Defendant filed a motion on March 14, 1984 in the Chancery Division, Family Part, which sought that: (1) plaintiff's child support payments be made through the Monmouth County Probation Department, with a provision for wage execution if any payment was more than two weeks late; (2) the divorce judgment be vacated as to that portion relating to equitable distribution, and (3) she be awarded counsel fees. Plaintiff opposed only the second and third grounds of the motion, and cross-moved for counsel fees.
The motion was heard on April 19, 1984. The judge[3] ruled, in part based on the plaintiff's consent to the first requested relief, that future court payments would be through the Monmouth County Probation Department with a proviso for wage execution on late payments. In an April 20, 1984 opinion supplementing her oral decision the judge rejected defendant's arguments that (1) the judgment should be set aside because the amendment to the statute relating to inherited assets had already been given retroactive effect and (2) she had not been aware of the change in the law of equitable distribution. The trial judge also concluded that the Supreme Court's holding on retroactivity was only applicable to court-ordered distributions and not to consensual agreements. The judge held that the status of the law at the time the parties entered into their original agreement was determinative, apparently not taking into account the amendment to the agreement which was entered into after L. 1980, c. 181 became effective. The judge did note in passing that the plaintiff's other factual arguments in opposition to defendant's motion were unpersuasive on the claims of laches, ratification and detrimental reliance.
In response to plaintiff's additional contention that he would now be entitled to equitable distribution of the wife's inherited assets because he contributed to their present value through his *167 independent efforts, it would appear that only the enhanced value attributable to plaintiff's efforts, if any, might have been so equitably distributed. The judge recognized that if she had to decide that issue on the merits it would have been necessary to hold a hearing. Counsel fees were denied.
On this appeal defendant argues that the trial judge should have applied the holding in Gibbons v. Gibbons, supra, to the circumstances of this case. She also argues that enforcement of the final judgment of divorce as it pertains to the equitable distribution provisions in the agreement incorporated in the judgment would be unconscionable.
Plaintiff argues that the trial judge did not err in refusing to reopen the equitable distribution aspects of the 1979 agreement. He argues that subsequent changes in statutory law did not affect the enforceability of a prior property settlement agreement, and that the trial judge properly rejected the argument that Gibbons v. Gibbons, supra, should be given retroactive application. In addition, plaintiff argues that defendant should have been denied relief on the basis of estoppel and laches, citing Lavin v. Hackensack Bd. of Ed., 90 N.J. 145, 152-153 (1982), and because the July 27, 1981 amendatory agreement should be considered a ratification of the prior agreement, thus barring the requested relief. Plaintiff further argues that the trial judge properly refused to address the issue of unconscionability because a prima facie case had not been established, and that in any event the September 19, 1979 agreement was fair and equitable under the law as it then existed and should be enforced.[4]
It is asserted by plaintiff that defendant's motive for challenging the agreement is that the lump-sum payment she *168 must make under the property settlement agreement was almost due, and that she could not adequately liquidate her assets to come up with the necessary cash. We consider that irrelevant. If defendant was unaware of her rights under the laws, and the court was likewise unaware of the applicability of this amended statute to the agreement at the time of entry of the decree, it does not matter why she asserts her rights to avoid paying what she claims she is not required to pay under the law.
Plaintiff further argues that an agreement freely and voluntarily entered into, presumably based on advice of competent counsel, cannot be the subject of a collateral attack based on a subsequent change of law and that the law in effect at the time of execution of the agreement should control. The trial judge was persuaded by this argument to rule that Gibbons v. Gibbons, supra was distinguishable from the present case because Gibbons involved a court-ordered distribution and was not precedent to permit an attack upon a previously negotiated and executed agreement between the parties.
We conclude that the judge was mistaken in her interpretation of Gibbons. Nothing therein suggests that that decision was intended to apply only to court-ordered distributions. In Gibbons the court carefully reviewed the legislative history of the 1980 amendment and the policy considerations which included the curative nature of the statute and the natural expectations of donors and donees. It decided to apply the legislation retroactively to any case pending on appeal or in which no final judgment had been entered. 86 N.J. at 524. It thus applied at the time of the divorce judgment in the instant case.
After L. 1980, c. 181 inherited assets are to be excluded from equitable distribution. Here both the July 27, 1981 amendment to the property agreement and the divorce proceedings of the same date, as well as the divorce judgment entered August 31, 1981, were subsequent not only to the enactment of L. 1980, c. 181, but to the decision in Gibbons. It would be natural to anticipate that with respect to pre-Gibbons agreements *169 not yet incorporated into a judgment at the time of Gibbons that the parties would take appropriate steps to modify or rescind an agreement which had included inherited property. Here, defendant did not move to modify the agreement prior to entry of the judgment. Apparently neither the judge nor defendant's attorney were aware of the amendment to the statute at the time of the divorce proceeding and the signing of the amendatory agreement. The court is, of course, obligated to apply the law as it existed at the time of the divorce judgment. This applies also to a property agreement incorporated by reference into the judgment. Although the judge was not asked to pass on the fairness of the agreement, it goes without saying that under our Rules of Professional Conduct, attorneys are enjoined to not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." RPC 3.3(a)(3). This rule evinces a strong policy that all relevant legal authority should be brought to the court's attention. Here, for whatever reason, the judgment was actually signed on August 13, 1981, without benefit of the statute being addressed or brought to the attention of the court, and this all occurred after the July 8, 1981 Gibbons decision.
Plaintiff relies on Skillman v. Skillman, 136 N.J. Super. 348 (App.Div. 1975), in support of his argument that a retroactive application of a change in the law of equitable distribution, in the context of a previously negotiated property settlement agreement, would disturb vested contract and property rights. Id. at 355. In Skillman the wife sought to vacate an unappealed judgment which had incorporated a property settlement agreement negotiated in reliance upon the trial court decision in Painter v. Painter, 118 N.J. Super. 332 (Ch.Div. 1972), which had held that property inherited during the marriage was not subject to equitable distribution. The trial judge was reversed by the Supreme Court after the final judgment of divorce had been entered. 65 N.J. 196 (1974). The wife in Skillman thus *170 argued that the parties had not considered inherited properties when they entered the property settlement agreement and that this change in the law since entrance of the final judgment of divorce presented grounds for modifying the agreement. In Skillman we had declined to modify the agreement or apply Painter retroactively. 136 N.J. Super. at 353.
We think Skillman is inapposite for a variety of reasons. There we had to consider whether a Supreme Court decision was to be applied retroactively. Id. at 353. Here, that issue has already been decided by Gibbons. Quite distinct from the principle that one trial court is not bound by another trial court decision,[5] after the 1980 amendment to N.J.S.A. 2A:34-23, the court would have had to take into account that amendment because of Gibbons. If the judge at the July 27, 1981 divorce hearing had been apprised of Gibbons and had refused to apply the 1980 amendment, the aggrieved party would have been able to seek appellate relief. Moreover, in Skillman the trial judge had considered and approved the terms of the settlement agreement and found them fair and equitable. 136 N.J. Super. at 354. In the present appeal, the judge specifically made no finding regarding equitable distribution or the fairness of the agreement.
We find more persuasive defendant's reliance on Castiglioni v. Castiglioni, 192 N.J. Super. 594, 596-598 (Ch.Div. 1984), where the wife sought to vacate a judgment entered "in that time warp" between a United States Supreme Court decision and the subsequent enactment of a federal statute effectively overruling the Supreme Court. That statute dealt with the includability of military pensions in marital estates for the purposes of equitable distribution. Castiglioni held that the judgment should be amended to allow the wife the retroactive *171 benefit of the statute. The judge concluded that it made no difference that "the issues between the parties were resolved by negotiated settlement and not a full bench trial." Id. at 598. We are not persuaded by plaintiff's argument that Castiglioni is distinguishable because it involved military pensions which implicate both federal and state law. As here, Castiglioni considered the retroactive effect of a statutory change in the law of equitable distribution in the context of a previously negotiated and signed settlement agreement which had relied on prior law.
In the instant appeal the flaw in the reasoning of the judge who denied the post-judgment motion is that she placed too much emphasis on the "contractual" nature of the matrimonial property settlement agreement. Our cases clearly indicate that such agreements are enforceable only if "fair and equitable." Petersen v. Petersen, 85 N.J. 638, 642 (1981); DiGiacomo v. DiGiacomo, 80 N.J. 155, 158 (1979); Smith v. Smith, 72 N.J. 350, 358 (1977). Because such interspousal agreements are enforceable only in equity, they are subject to "the court's power to exercise continued supervisory control." Smith v. Smith, supra, 72 N.J. at 358, quoting Schlemm v. Schlemm, 31 N.J. 557, 580 (1960). See also Carlsen v. Carlsen, 72 N.J. 363, 370-371 (1977); Lepis v. Lepis, 83 N.J. 139, 148-149 (1980); Smith v. Smith, supra, 72 N.J. at 360.
Here, elements of unfairness and inequity are injected because of the substantial inherited assets which would not have been included in the property settlement agreement, but for the wife's ignorance of the amended statute. It is true that fair agreements arrived at by mutual consent "should not be unnecessarily or lightly disturbed." Smith v. Smith, supra, 72 N.J. at 358. Nevertheless, the legislative purpose to afford equitable distribution of marital assets is an important consideration. Ibid. In the Smith case the wife had entered into a property settlement agreement prior to enactment of the equitable distribution provision in the divorce law. Her spouse argued there, as did the spouse in Castiglioni, supra, that by *172 voluntarily entering into the agreement she released her claim to have the assets equitably distributed. The Supreme Court in rejecting that argument reasoned that the wife could not have released a right which she did not have at the time and which could not fairly have been anticipated. 72 N.J. at 359.
That reasoning applies here to the 1979 agreement. Defendant could not be said to fairly have anticipated a change in the law of equitable distribution when she signed the agreement in September 1979. Moreover, the July 27, 1981 amendatory agreement and divorce judgment of the same date occurred after the December 30, 1980 amendment to N.J.S.A. 2A:34-23. We agree with the trial judge that plaintiff's ratification argument is not persuasive. There was not only no necessity to ratify the original agreement where the amended agreement dealt essentially with child support and could have been entered into at any time, but the ratification had no independent effect. There is no reasonable basis to distinguish between judicial decrees and consensual agreements where equitable distribution is involved. We again observe that the agreement as amended was incorporated in the judgment, and to that extent became part of the judicial decree, even though the court expressly made no findings of fact with respect to the fairness of that agreement. The agreement is not immune from judicial modification or supervision merely because it has been incorporated into a final judgment. If anything, by being incorporated in a divorce judgment, it becomes subject to judicial scrutiny as to its fairness. See Carlsen v. Carlsen, supra; Smith v. Smith, supra.
We conclude that the trial judge erred in her determination and that Gibbons is not limited to court-ordered distributions. The property settlement agreement can only be enforced in equity and only to the extent that it is fair and equitable. Hence, we reverse the trial judge's determination on that aspect.
Here, the wife's effort to have a modification hearing regarding the property settlement agreement did not occur prior to *173 the entry of the judgment. We therefore now consider whether defendant may successfully move to open this judgment and challenge the agreement based on a claim of mistake of law or inequitable distribution of property, some two years and eight months after it was entered.
R. 4:50-1 provides for relief from a final judgment for "(a) mistake, inadvertence, surprise or excusable neglect; ... or (f) any other reason justifying relief from the operation of the judgment or order." A motion brought under that rule must be made "within a reasonable time" and if based on subsection (a), not more than a year after the judgment was entered. R. 4:50-2. Such a motion is addressed to the sound discretion of the court. Hodgson v. Applegate, 31 N.J. 29, 37 (1959). There are no set rules for situations arising under subsection (f), but in such exceptional cases the phrase "reasonable time" is "as expansive as the need to achieve equity and justice." Court Investment Co. v. Perillo, 48 N.J. 334, 341 (1966).
Our courts have applied a similar standard with respect to rescission or modification of property settlement agreements incorporated within final judgments of divorce. See, e.g. Palko v. Palko, 73 N.J. 395, 397-398 (1977); Barrie v. Barrie, 154 N.J. Super. 301, 303 (App.Div. 1977), certif. den. 75 N.J. 601 (1978); Ganther v. Ganther, 153 N.J. Super. 226, 228-229 (App. Div. 1977). In this State even a negligent failure to know or discover the facts about which both parties are mistaken, need not preclude rescission or reformation. Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 445 (App.Div. 1979). See also Dover Pool & Racquet Club, Inc. v. Brooking, 366 Mass. 629, 322 N.E.2d 168 (1975).
We conclude that appellant's motion to reopen was within a reasonable time under the circumstances presented in this case. R. 4:50-1(f); Palko v. Palko, supra 73 N.J. 395 (1977). We are satisfied under the circumstances here that the trial judge mistakenly exercised her discretion in refusing to *174 allow modification of the judgment under R. 4:50-1(f). We need not discuss whether the failure of defendant's former attorney in either not knowing or not apprising the court or the client of the changed law would alone warrant being considered exceptional in all circumstances under subsection (f). What is involved is the court's unexercised power to determine the fairness of this particular agreement under the law regarding equitable distribution. The uncertainty as to the distribution, taking into account the inappropriateness of including the inherited property in the equitable distribution, together with the fact that under the parties' agreement the wife receives no alimony, renders the results here "unjust, oppressive, or inequitable." Quagliato v. Bodner, 115 N.J. Super. 133, 138 (App. Div. 1971).
The trial judge rejected plaintiff's defenses of laches and ratification and essentially concluded, in dictum that defendant had made a timely claim, and that the mere passage of time would not constitute a bar to her relief. We agree with the trial judge in that regard. Plaintiff's equitable estoppel argument is somewhat misleading and his claim of detrimental reliance is unpersuasive. He paid no alimony to his former wife and only pays child support. Hence, we are unable to perceive what benefits the former wife has received that she would not have otherwise received. Cf. Esposito v. Esposito, 158 N.J. Super. 285, 300 (App.Div. 1978) (recognizing that support payments are intimately tied to equitable distribution; large cash settlement would produce substantial interest income which could supplement support payments).
Plaintiff's argument that he assumed a greater share of the marital debt does not provide a basis for allowing the equitable distribution to stand as is. The value of the assets received by each party had taken into account any outstanding debt or liability because it appears that when the agreement was negotiated the net value of each asset was assumed. The parties do not agree on what percentage of the assets each actually were to receive under the agreement. There is great difficulty *175 establishing any precise figures because of the wide range of values attempted to be attributed to the Missouri property. It appears that one reasonable analysis indicates plaintiff would have received almost 70% of the marital (noninherited assets), and at least 20 to 25% of his former wife's inherited assets. The appropriate values may be more precisely determined by the trial judge on the remand of this matter.
Accordingly, the judgment is reversed, the matter is remanded to the trial judge with instructions to declare those assets included in the property settlement agreement which had been acquired by the former wife by way of inheritance to be solely her property and not subject to equitable distribution under N.J.S.A. 2A:34-23. We further direct that a plenary hearing be held with respect to the fairness of the agreement as modified by this opinion to exclude the inherited property. Of course, any future agreement of the parties may obviate the need for such hearing.
Reversed in part and remanded. We do not retain jurisdiction.
NOTES
[1] Defendant was represented by different counsel in the trial court than on this appeal.
[2] N.J.S.A. 2A:34-23 was subsequently amended to exclude property acquired by either spouse during marriage by "gift, devise, or intestate succession." L. 1983, c. 519, § 1, eff. January 17, 1984.
[3] A different judge than the one who presided over the divorce heard the motion.
[4] Plaintiff filed a motion shortly before the date set for oral argument of this appeal to strike a portion of defendant's reply brief, or in the alternative to allow supplementation of the record. We reserved decision on that motion pending argument of the merits of the appeal. We now deny that motion in all respects.
[5] See Caldwell v. Tp. of Rochelle Park, 135 N.J. Super. 66, 76 (Law Div. 1975). We refer here to the reliance of the trial judge in Skillman on the trial court decision in Painter v. Painter, 118 N.J. Super. 332 (Ch.Div. 1972), which was overturned on this issue at 65 N.J. 196 (1974).