582 A.2d 815

JOSEPH CAPUZZO, PLAINTIFF–APPELLANT, CROSS–RESPON-
DENT, v. FRANCES CAPUZZO, DEFENDANT–RESPONDENT,
CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 29, 1990—Decided November 14, 1990.

318

Before Judges PETRELLA, BILDER and BROCHIN.

*Kantrowitz & Goldhamer*, attorneys for appellant-cross-respondent (*Amy Baldwin Littman*, on the brief).

*Kreiger, Karas, Kilstein, Kopf & Baime*, attorneys for respondent-cross-appellant (*Barry L. Baime*, on the brief).

The opinion of the court was delivered by

BILDER, J.A.D.

These are cross-appeals from certain of the provisions of a Final Judgment of Divorce. Plaintiff, former-husband, appeals the alimony, support and equitable distribution provisions. Defendant, former-wife, cross-appeals from the denial of counsel fees.

The parties were divorced July 12, 1989 following over 27 years of marriage which produced two children, Guy, now 20, and Paul, now 17. Although the parties never lived apart, their marital history included a 1985 divorce and a 1986 remarriage. In her oral decision of March 13, 1989 and the resulting judgment of divorce, the trial judge treated the marriage as a continuing one and dealt with the incidents of the divorce, *i.e.* custody, alimony, support and equitable distribution, accordingly.

Plaintiff's initial contention is directed at the refusal of the trial judge to give effect to a stipulation of settlement which

was incorporated in the 1985 judgment of divorce.[1]

At the time of the filing of both complaints for divorce (the first by the wife, the second by the husband), the party's principal assets consisted of the matrimonial home (valued at about $225,000), the husband's vested pension plan (valued at about $109,000) and some $20,000 in bank accounts, principally IRAs (about $15,000 in his name; $5000 in hers).

The 1985 stipulation of settlement only divided the jointly held property. Defendant wife was to receive by way of equitable distribution a $35,000 lump sum payment (presumably as her share of the pension plan), to be obtained by a mortgage loan on the marital residence, and a 41% interest in the marital residence, subject to deferred payments.[2] Each party was to retain the assets owned in their own names. This included the bank accounts and pension. Defendant-wife was to vacate the residence within 90 days and would thereafter receive alimony of $100 per month.

The provisions of the agreement were never complied with. Defendant-wife never left the premises; no mortgage was obtained; no payments were made. As noted, a reconciliation was followed by remarriage.

In her decision, the trial judge found the earlier agreement unfair and inequitable. She treated the marriage as one of 27 years duration and made equitable distribution on the basis of the facts as they existed at the time of the second proceeding. Plaintiff contends this action unlawfully deprived him of vested rights which arose from the agreement and the 1985 judgment. He characterizes it as a constitutional impairment of contract.

---

[1] The 1985 order recited the existence of the agreement and followed it but specifically declined to pass on its fairness. "[T]his Court makes no specific finding that the agreement is fair and equitable."

[2] $50 per month payments from plaintiff husband as advances on the final distribution and the balance on the sale of the property, which might be deferred for as along as 10 years.

Although the factual situation facing us is unique and therefore not referable to case law precisely on point, we entertain no doubt as to the propriety of the trial judge's action. The lack of precise precedent does not mean that there is not significant judicial guidance. Judge Stark's actions find support in well-established principles of divorce law as to equitable distribution and alimony, general notions of equity and the guidance of analogous case law.

Initially, it is important to note again that the 1985 agreement was never complied with, it remained totally executory. It is a general rule, recognized by our courts, that a reconciliation before a divorce abrogates the executory provisions of a separation agreement. *See Brazina v. Brazina,* 233 *N.J.Super.* 145, 151–152, 558 *A.*2d 69 (Ch.Div.1989); *Weiner v. Weiner,* 120 *N.J.Super.* 36, 39, 293 *A.*2d 229 (Ch.Div.1972), aff'd o.b. 126 *N.J.Super.* 155, 313 *A.*2d 222 (App.Div.1974), certif. den. 65 *N.J.* 286, 321 *A.*2d 247 (1974). Although we have found no cases dealing with a reconciliation and remarriage after divorce, in *Weiner* the court suggested, by way of *dicta,* that a remarriage would restore the previous marital circumstances. 120 *N.J.Super.* at 40, 293 *A.*2d 229. At least in the circumstances of the present case we have no doubt of the correctness of that conclusion. It clearly comports with the parties' intentions, as evidenced by the way they conducted themselves. Whatever their personal relationship, which was at times tranquil and at times chaotic, their financial relationship—the economic partnership of their marriage—was constant. It had an historical continuum unaffected by the agreement, the divorce, the post-divorce cohabitation, the reconciliation or the remarriage. The trial judge's decision to make distribution of the marital estate from 1962 up through 1987, the date of the second complaint, accords with the facts and with general notions of equity and fair play. It also accords with general notions of divorce law which seek to retain for each party his and her fair share of the product of their joint efforts. *See Carr v. Carr,* 120 *N.J.* 336, 346–350, 576 *A.*2d 872 (1990). Here the trial judge has clearly

done that. The assets she has dealt with are undeniably the result of the parties' joint efforts over the 25 years between 1962 and 1987. In her oral opinion of March 13, 1989, Judge Stark eloquently describes the commingling of skills, aspiration and effort which created the estate which she divided. She noted that these efforts were constant and continuous from 1962 through August 17, 1987.

Alternatively, we note the residual power given to the court by *R.* 4:50–1(f) to modify the earlier judgment. *See Edgerton v. Edgerton*, 203 *N.J.Super.* 160, 173, 496 *A.*2d 366 (App.Div. 1985). This was, in essence, the authority employed by the trial judge when she referred to *Lepis v. Lepis*, 83 *N.J.* 139, 151, 416 *A.*2d 45 (1980), which in a strict sense applies to continuing obligations such as alimony and support. Here the equitable distribution was similarly executory and the reopening of the judgment was authorized by *R.* 4:50–1(f) as well as the principles of *Lepis*. The trial judge's factual conclusions in this regard are fully supported by substantial credible evidence in the record. *See Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974).

Both parties' remaining contentions are clearly without merit. The alimony and support awards comported with the criteria of *N.J.S.A.* 2A:34–23 and cannot be said to be an abuse of discretion. *See Borodinsky v. Borodinsky*, 162 *N.J.Super.* 437, 443, 393 *A.*2d 583 (App.Div.1978). The eventual tax consequences are unknown. *See Orgler v. Orgler*, 237 *N.J.Super.* 342, 355, 568 *A.*2d 67 (App.Div.1989). The conclusions as to the value of the IRA accounts is supported by substantial credible evidence in the record. As to counsel fees, see *Williams v. Williams*, 59 *N.J.* 229, 233, 281 *A.*2d 273 (1971). We cannot help but note that the circumstances of the parties are far from static. If the circumstances should significantly change, the parties can always receive relief under the principles of *Lepis, supra*, 83 *N.J.* at 149, 416 *A.*2d 45.

Affirmed.