**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0881-19T3

VICTORIA GOETHALS,

    Plaintiff-Appellant,

v.

JEFFREY GOETHALS,

    Defendant-Respondent.

_____

          Submitted December 14, 2020 – Decided January 20, 2021

          Before Judges Currier and Gooden Brown.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0109-15.

          Townsend, Tomaio & Newmark, LLC attorneys for appellant (Paul H. Townsend, of counsel and on the briefs; Jennifer M. Cornelius and Angela K. Halvorsen, on the briefs).

          Gomperts Penza McDermott & Von Ellen, attorneys for respondent (Joseph M. Freda, III and Marisa Lepore Hovanec, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff/ex-wife appeals from the October 11, 2019 Family Part order denying reconsideration of an August 23, 2019 order. The August 23 order denied her request to correct a provision of the marital settlement agreement (MSA) incorporated into the parties' three-year-old final judgment of divorce (FJOD). The provision allowed for the equitable distribution of stocks paid to defendant/ex-husband as part of his compensation as an executive of Ross Stores, Inc. For the reasons that follow, we reverse.

The parties divorced in 2016 after a fifteen-year marriage that produced two sons. Since the divorce, they have engaged in extensive post-judgment motion practice, including appellate litigation that recently resulted in an unpublished decision partially reversing and remanding for further proceedings issues unrelated to this appeal. See Goethals v. Goethals, No. A-0513-18 (App. Div. Jan. 7, 2020). This appeal pertains solely to the identification of the Ross stocks subject to equitable distribution in the MSA entered on May 5, 2016 and incorporated into the FJOD of the same date.

Paragraph fifty-two of the MSA provides:

> The parties have a joint E-Trade (-1941) account. The parties acknowledge that said account is comprised of [defendant's] Employee Stock Purchase Plan shares and [defendant's] stock options which have vested. With

2

respect to the Employee Stock Purchase Plan shares, there were 3,306 marital shares of Ross Stock. [Defendant] shall transfer 1,653 of the Employee Stock Purchase Plan Stock to [plaintiff], in kind within thirty (30) days. With respect to the stock options that have vested, in 2010, [defendant] was granted 7,414 stock options. On March 17, 2014, 2,780 of those shares vested, resulting in sellable net shares of 1,724 shares, which were ultimately placed into the -1941 E-Trade account. [Plaintiff] shall receive [fifty percent] of these shares, or 862 shares, in kind, by way of equitable distribution within thirty (30) days. On March 17, 2015, 4,634 shares of [defendant's] 2010 grant of stock options vested. This resulted in 2,921 net sellable shares which were placed in the -1941 E-Trade account. [Plaintiff] shall receive [forty percent] of those shares, or 1,168 shares, in kind, by way of equitable distribution within thirty (30) days. [Defendant] was granted 1,326 stock options on March 14, 2012 which vest[ed] on March 14, 2017. [Plaintiff] will receive [thirty percent] of the net sellable shares of the 2012 grant, in kind, at the time they vest as additional equitable distribution. [Defendant] was granted 1,247 stock options on March 20, 2013[,] which vest[ed] on March 20, 2018. [Plaintiff] will receive [twenty percent] of the net sellable shares of the 2013 grant, in kind, at the time they vest as additional equitable distribution.

On June 6, 2019, plaintiff moved pursuant to Rule 4:50-1 to correct paragraph fifty-two of the MSA "to accurately reflect [her] equitable share of [d]efendant's Employee Stock Purchase Plan, Options vested and unvested"

A-0881-19T3

subject to equitable distribution.[1]  In her supporting certification, plaintiff asserted that "the date to be used for valuation of [the parties'] marital property for purposes of equitable distribution" was "July 21, 2014," the date she filed the divorce complaint.  To that end, based on defendant's production of documents, "[p]aragraph [fifty-two] of [their] MSA identifie[d] 13,293 shares as marital property" in the following manner:

> a. [3306] marital shares in Employee Stock Purchase Plan, of which [plaintiff] was to receive [1653];
>
> b. 2780 stock options granted in 2010 which vested, of which [plaintiff] was to receive 862 shares;
>
> c. 4634 stock options granted in 2010 which vested, of which [plaintiff] was to receive 1168 shares; and
>
> d. two tranches of unvested stock options which was [set] to vest in March 2017 and March 2018, at which time [plaintiff's] share of the net sellable shares would need to be calculated.

However, as a result of a June 8, 2018 meeting convened by Susan Miano, a forensic accountant appointed by the court in 2017 to address financial issues related to other post-judgment litigation, both parties were advised that based on "a 2-for-1 stock split" of Ross stocks that occurred on June 11, 2015, "while

---

[1] In her moving papers, plaintiff requested oral argument pursuant to Rule 1:6-2(d) if the application was opposed.

[the] divorce was pending," the numbers reflected in paragraph fifty-two of the MSA were incorrect. According to plaintiff, based on Miano's discovery, the stock split resulted in doubling "the marital shares . . . so that instead of 13,293 shares to be distributed, there were actually 26,586 shares subject to equitable distribution." (Emphasis omitted).

Plaintiff explained:

This means that [her] equitable share[s] as of May 2016, the date the MSA was signed, [were] as follows:

a. [3306] shares from Employee Stock Purchase Plan,

b. [1724] shares of the first 2010 tranche of vested options,

c. [2336] shares of the second 2010 tranche of vested options,

d. [thirty percent] of the net sellable shares attributable to the [2652] shares arising from the 2012 grant; and

e. [twenty percent] of the net sellable shares attributable to the [2494] shares arising from the 2013 grant.

According to plaintiff, "[u]sing the current market value of Ross stocks, just the balance of Employee Stock Purchase Plan and the options granted in 2010" would entitle her to "another $350,695.26 ($95.22 x [3683] shares)," not

including the final two tranches of options from the 2012 and 2013 grants. However, plaintiff was not seeking "to re-open the amount" she had already "received for . . . 12,046 shares[] but only the shares [she had] not received to date," including "the other 12,046 shares created by the stock split and [her] equitable interest ([twenty percent] of net sellable share) in the 2494 options which vested in March 2018."

Plaintiff averred that since the discovery, efforts to resolve the issue without court involvement have been futile, notwithstanding defendant's initial acknowledgement during the meeting with Miano that "it must have been a mistake." While plaintiff "believe[d defendant] either knew or at least should have known that his company issued a stock split during the pendency of [their] divorce," and despite other instances during which defendant "ha[d] been less than honest and forthcoming about the value of [their] marital assets," plaintiff was "will[ing to] give him the benefit of the doubt and assume that it was inadvertent and not intentional fraud on his part." Plaintiff asserted "[i]f that means . . . we call this simply a 'mutual mistake' which resulted in an unintentional error in [their] MSA, so be it."

Defendant opposed the motion, asserting that plaintiff's application was "procedurally deficient as same was submitted without a brief contrary to Court

6

Rule, was submitted almost two . . . years after the deadline [contrary to] Court Rule, was a relitigating of an issue previously adjudicated by the [c]ourt, and [was] contrary to the express language of [their] MSA." Defendant stated that "[d]espite [p]laintiff's claims to the contrary, th[e] E-Trade account was a [joint] account," and "[p]laintiff had full and complete access to [the] account for the duration of [their] marriage, and for almost one (1) year following [their] divorce." Moreover, according to defendant, plaintiff previously acknowledged in a November 2016 "post-divorce certification . . . that she was familiar with the account details and spoke with E-Trade representatives herself regarding the details of this account."

Further, defendant averred "[t]here was absolutely no mistake nor fraud" as the "MSA was negotiated at length between counsel, [the parties], the economic mediator, and the multiple forensic accountants." Defendant pointed out that the absence of mistake or fraud was "confirmed" in "paragraph fifty-eight . . . of [the] MSA," where they "acknowledged that . . . [e]ach party [was] fully satisfied with the full disclosure of each of the accounts as provided herein and both have reviewed all account statements and other documentation necessary relative to the balances distributed and amounts not subject to equitable distribution." According to defendant, because "[e]verything was

intertwined," if the court "entertain[ed] the amendment of the E-Trade provision, all issues within the MSA would need to be addressed."

Additionally, defendant stated they "previously addressed the stock issues at length in connection with post-judgment litigation and resolved same in full" in 2017 when he paid plaintiff "the total sum of $244,687.59 as her share of the sale of [Ross s]tock." Defendant stated "if th[e c]ourt were to entertain [p]laintiff's application, . . . . a plenary hearing would be required along with substantial discovery" to resolve the "material issue of fact" created by their conflicting positions.

In a reply certification, plaintiff averred that her application was neither procedurally nor substantively deficient because she "filed [it] within [one] year (to the day) of discovering what happened" and included the requisite supporting brief. See R. 4:50-1 (requiring briefs with the filing of the motion). Plaintiff also pointed out that defendant neither denied the occurrence of the stock split "during the pendency of [their] divorce, due to completely passive market forces," nor claimed "not to have known about it." Thus, according to plaintiff, without correction, "[t]he existing language [in the MSA] amount[ed] to unjust enrichment, providing a baseless windfall to . . . defendant."

A-0881-19T3

Based only on the written submissions of the parties, the motion judge entered an order on August 23, 2019, denying plaintiff's application. In the accompanying statement of reasons, after citing Rule 4:50-1 in its entirety, the judge explained:

> Plaintiff has brought this application to reform the MSA based on mistake, though she hints it may be the result of fraud. Notwithstanding the specific basis [p]laintiff seeks to reform the agreement under, her application is time-barred. [Rule 4:50-1(a)] does not state, as [p]laintiff suggests, that the application must be brought within one year of the discovery of the mistake. Instead [Rule] 4:50-2 specifically states the application must be brought within one year of the entry of the judgment or order.

Plaintiff moved for reconsideration of the August 23 order over defendant's objection.[2] Relying on Farrell v. TCI of Northern N.J., 378 N.J. Super. 341 (App. Div. 2005) and subsection (f) of Rule 4:50-1, plaintiff argued that her application was not, in fact, time barred. Plaintiff asserted the court's equitable powers allowed for an extension of the timeline, and the applicable timeline began to run when plaintiff had actual notice of the claimed mistake, new evidence, or fraud.

---

[2] Plaintiff again requested oral argument if her motion was opposed.

A-0881-19T3

In an October 11, 2019 order, the judge again denied the motion on the written submissions only. In the accompanying statement of reasons, the judge determined plaintiff failed to satisfy either ground for reconsideration. See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (explaining reconsideration is only available when "either (l) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990))).

The judge distinguished Farrell, where we determined "that implicit in the time proscriptions of Rule 4:50-2 is that the order from which relief is sought pursuant to Rule 4:50-1 must first have been served upon the attorney of the party against whom the order was entered as required by Rule 1:5-1" or that "the attorney must have actual knowledge of the order." 378 N.J. Super. at 348. The judge concluded that "[h]ere, unlike Farrell, it is undisputed that plaintiff and her counsel received the [MSA] at or near the time it was entered into on May 5, 2016. Thus, the one-year deadline under [Rule] 4:50-2 began to run on that date." This appeal followed.

On appeal, plaintiff argues that because her "application was made under multiple grounds – mistake, fraud, and equitable grounds," while "the one-year time-frame cited by the [t]rial [c]ourt may have served to preclude consideration of her motion purely on the grounds of mistake or newly discovered evidence," the fact that she filed the motion "within one . . . year of discovering a fraud or other misconduct should be sufficient to meet the more flexible 'reasonable time' standard permitted under other subsections of the Rule." Plaintiff asserts further that "[e]ven if the [c]ourt believed that the timeframe for Rule 4:50 precluded [p]laintiff's motion, relief should have been granted under the court's equitable jurisdiction in the interests of justice to make right what is wrong." Instead, plaintiff argues, the court's analyses in its August 23 and October 11, 2019 decisions "completely ignore the relevant law and misapply the [c]ourt [r]ules to summarily deny [p]laintiff's application."

Our review of orders entered by the Family Part is generally deferential. Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (citing Gnall v. Gnall, 222 N.J. 414, 428 (2015)). Nevertheless, "when reviewing legal conclusions, our obligation is different; '[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo.'" Id. at 319

A-0881-19T3

(alteration in original) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).

We also review a trial court's decision on a motion for reconsideration under an abuse of discretion standard. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Accordingly, "a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). A court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, plaintiff's application for relief was brought under Rule 4:50-1, which "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113, 120 (1977) (citing Hodgson v. Applegate, 31 N.J. 29, 43 (1959)). Therefore,

> [a] motion under Rule 4:50-1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining whether relief should be granted or denied. The decision granting or

> denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion.
>
> [Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994) (internal citations omitted).]

"Rule 4:50-1 provides for relief from a judgment in six enumerated circumstances," In re Estate of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006), and "does not distinguish between consent judgments and those issued after trial." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009). Pertinent to this appeal, Rule 4:50-1 provides for relief from a final judgment for "(a) mistake, inadvertence, surprise, or excusable neglect; . . . (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (f) any other reason justifying relief from the operation of the judgment or order."

A motion brought under Rule 4:50-1 must be made "within a reasonable time" but if based on subsection (a) or (c), "not more than one year after the judgment . . . was entered." R. 4:50-2. See Edgerton v. Edgerton, 203 N.J. Super. 160, 173 (App. Div. 1985) ("There are no set rules for situations arising under subsection (f), but in such exceptional cases the phrase 'reasonable time' is 'as expansive as the need to achieve equity and justice.'" (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966))).

13

Generally, "[t]he application of . . . subsection [(f)] requires the demonstration of 'exceptional circumstances.'" Schifftner, 385 N.J. Super. at 41 (quoting Perillo, 48 N.J. at 341). Thus, to obtain relief under subsection (f), a movant must show that the enforcement of the order "would be unjust, oppressive or inequitable." Greenberg v. Owens, 31 N.J. 402, 411 (1960) (Jacobs, J., dissenting) (citation omitted). Although relief under Rule 4:50-1 "is granted sparingly," F.B. v. A.L.G., 176 N.J. 201, 207 (2003) (citing Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:50-1 (2003)), the boundaries under subsection (f) "are as expansive as the need to achieve equity and justice." Little, 135 N.J. at 290 (quoting Palko v. Palko, 73 N.J. 395, 398 (1977)).

"[C]ourts have allowed modification of property settlement agreements under the catch-all paragraph (f) of R[ule] 4:50-1, . . . where there is a showing of inequity and unfairness." Rosen v. Rosen, 225 N.J. Super. 33, 36 (App. Div. 1988). "Further, where there is a showing of fraud or misconduct by a spouse in failing to disclose the true worth of his or her assets, relief may be granted under R[ule] 4:50-1(f) if the motion is made within a reasonable time." Id. at 37 (citing Palko, 73 N.J. at 397-398). See also Edgerton, 203 N.J. Super. at 173 (allowing modification of divorce judgment under Rule 4:50-1(f) "some two

14

years and eight months after it was entered" where parties mistakenly treated inherited property as marital asset subject to equitable distribution in the MSA). Cf. Capanear v. Salzano, 222 N.J. Super. 403, 409 (App. Div. 1988) (noting that even if the movant's application was considered under Rule 4:50-1(f), a reopening of a divorce judgment "some ten years after its entry to reform the incorporated agreement" was not "within a reasonable time nor does it appear that enforcement of the judgment as entered would be unjust or inequitable").

Here, plaintiff meets the standard for relief from the final judgment under Rule 4:50-1(f). There is no dispute that as a result of an undisclosed stock split doubling the number of Ross stocks, that post-dated the filing of the divorce complaint but pre-dated the execution of the MSA, the MSA incorrectly identified the number of stocks subject to equitable distribution under paragraph fifty-two. The ensuing undervaluing of plaintiff's interest renders the result "unjust, oppressive, or inequitable," Quagliato v. Bodner, 115 N.J. Super. 133, 138 (App. Div. 1971), and justifies a modification of the MSA. "The issue is not the rightness or wrongness of the original determination at the time it was made but what has since transpired or been learned to render its enforcement inequitable." In re Guardianship of J.N.H., 172 N.J. 440, 476 (2002).

A-0881-19T3

Because we are satisfied that subsection (f) of Rule 4:50-1 provides a basis to modify the agreement, whether the error was a result of mutual mistake of the parties or intentional fraud by defendant is immaterial. "What is involved is the court's unexercised power to determine the fairness of this particular agreement under the law regarding equitable distribution." Edgerton, 203 N.J. Super. at 174. See Pascale v. Pascale, 140 N.J. 583, 610 (1995) (explaining that while "[t]he brightline rule . . . is that the date on which a divorce complaint was filed fixes the marital termination date for equitable distribution purposes," "stock options awarded after the marriage has terminated but obtained as a result of efforts expended during the marriage should be subject to equitable distribution.").

We also conclude plaintiff's motion was filed within a reasonable time under the circumstances, and the judge mistakenly exercised his discretion in his cabined view of the applicable subsection and failure to allow modification of the judgment under subsection (f) of the Rule. We therefore reverse and remand with instructions to the judge to correct the number of Ross stocks included in paragraph fifty-two of the MSA that is subject to equitable distribution. The judge should allow discovery and conduct a plenary hearing, if necessary, to determine the number and value of shares owed to plaintiff and

16

direct defendant to pay the outstanding amount that has not been paid or distributed to plaintiff to date. "Of course, any future agreement of the parties may obviate the need for such hearing." Edgerton, 203 N.J. Super. at 175.

Because we are remanding the matter, it is not necessary for us to address plaintiff's additional contention that the judge erred in denying her request for oral argument. We note, however, that the better practice is for trial courts to afford parties oral argument when such a request is made. See R. 5:5-4(a) (providing that a court should ordinarily grant requests for oral argument on "substantive" motions); Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div. 2010) ("The denial of oral argument when a motion has properly presented a substantive issue to the court for decision 'deprives litigants of an opportunity to present their case fully to a court.'" (quoting Mackowski v. Mackowski, 317 N.J. Super. 8, 14 (App. Div. 1998))).

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0881-19T3