**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1711-23

DARLENE STIEH,

     Plaintiff-Respondent,

v.

MARK STIEH, SR.,

     Defendant-Appellant.

_____

> Submitted May 7, 2025 – Decided July 30, 2025
>
> Before Judges Currier and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-0407-17.
>
> Robert J. Pompliano, attorney for appellant.
>
> Feintuch, Porwich & Feintuch, attorneys for respondent (Alan S. Porwich, on the brief).

PER CURIAM

     Defendant Mark Stieh, Sr., appeals from a November 9, 2023 Family Part

order terminating his alimony obligation to plaintiff Darlene Stieh, but requiring

defendant to pay plaintiff $34,350 in alimony arrears up through that date contemporaneously entering a final judgment of divorce (FJOD). He also appeals the court's January 19, 2024 order denying his motion for reconsideration. On review of the record in light of applicable legal principles, we affirm.

I.

Plaintiff and defendant were married on September 8, 1990, and plaintiff filed a complaint for divorce in 2016 citing irreconcilable differences. Plaintiff sought joint legal custody and primary physical custody of their unemancipated child, child support, alimony, and equitable distribution.

Before trial commenced on March 28, 2018, the court granted a limited judgment of divorce from bed and board (LJD), and the parties entered a handwritten marital settlement agreement (MSA). The MSA required defendant to pay "open durational alimony of $150[] per week, effective April 13, [2018]." The MSA described the amount as based on "an imputed annual income of $75,000[] to defendant and $50,000[] to plaintiff." The MSA required defendant to continue to pay $176 per week in child support to plaintiff, set by a prior order predating the divorce complaint. It also compelled plaintiff to maintain through her employment medical insurance for defendant and their child.

The MSA expressly stipulated: "Alimony shall cease upon plaintiff obtaining a final judgment of absolute divorce or further order of the court as a result of a change in circumstances, including, but not limited to the parties' respective health and defendant's ability to work overtime."

In March 2019, plaintiff filed a motion seeking in relevant part an order requiring defendant to satisfy his alimony arrears. The parties resolved the matter by entering a consent order on May 23, 2019. The consent order fixed alimony arrears at $8,400—the amount defendant owed to plaintiff between April 13, 2018 and May 10, 2019. The parties subsequently agreed to further credits owed to defendant and entered a consent order stating $316.60 was owed in alimony arrears as of May 10, 2019.

Because defendant was terminated from his employment in April 2019, the parties agreed defendant would make direct payments to Probation rather than through wage garnishment. The consent order also contained the following provision:

> Any future alimony and child support payments made by defendant shall be without prejudice to any future application by defendant to seek a modification of alimony and/or child support to be paid by defendant, based upon a change in the economic circumstances of the parties. Any such application shall only be retroactive to the filing date of such application.

3

On January 14, 2020, defendant filed a motion to modify alimony, based on an alleged "change of circumstances." Defendant contended his overtime hours were reduced and he lost his job due to a work-related injury, and his resulting workers' compensation payments of $700 weekly placed his income "at approximately half of the agreed upon amount" in the MSA. He further claimed that plaintiff now earned $70,000 per year, significantly above the MSA-stipulated amount. He argued these events constituted changed circumstances sufficient to warrant termination of his alimony obligations.

On February 5, 2020, before litigating or resolving the pending motion, the court granted defendant's counsel's request to withdraw the motion.

Three years later, plaintiff moved to convert the LJD to an FJOD and to enforce litigant's rights, requesting the court order defendant to pay the outstanding alimony arrears.

In her supporting certification, plaintiff alleged defendant failed to pay 217 weeks of alimony between May 11, 2019 and July 7, 2023, amounting to $32,550 with a $600 credit for the amount defendant paid during that period.

After twice obtaining adjournments for his responsive filing, defendant filed opposition to plaintiff's motion and a cross-motion on October 25, 2023, seeking an order terminating his alimony obligation "based upon a change in the

4

parties' financial circumstances," and requesting the termination be made retroactive to January 1, 2019. Specifically, defendant claimed (1) the MSA provision setting alimony was contingent upon his earning at least $75,000 per year—an amount including an anticipated twenty to thirty hours per week of overtime—and his employer reduced overtime starting in January 2019; (2) he was unemployed after sustaining work-related injuries in April 2019 and September 2019, reducing his income to a $700 weekly workers' compensation payment; (3) he was "granted an early retirement" and approved for Social Security disability benefits of $1,763 per month; (4) "since the beginning of 2019[, he] never approached the agreed[-]upon annual sum of $75,000[] upon which the alimony award was based," and "[p]laintiff was fully aware of [his] catastrophic injury and that is w[h]y she never filed an application to enforce the alimony award"; and (5) he did not owe alimony because the parties "specifically agreed that the overtime issue was the predicate to claim alimony based upon the difference in [their] annual incomes." Defendant attached documents regarding his workers' compensation and Social Security awards.

On October 31, 2023, plaintiff filed opposition contending (1) retroactive forgiveness of arrears defendant accrued over four years would now be inequitable and contrary to the parties' prior agreements; (2) defendant's

application for retroactive termination as of January 1, 2019 ignored the plain language of the May 2019 consent order providing for retroactivity to the date of filing; (3) defendant's obligation to pay weekly alimony in the amount of $150 was "not an onerous amount" in light of plaintiff's providing defendant with "medical, dental, prescription drug and vision insurance"; and (4) defendant's claim for retroactive termination should fail as the motion was filed after her initial motion seeking an FJOD.

On November 9, 2023, the court issued an FJOD granting plaintiff's request to convert the LJD to an FJOD, and incorporated into its terms the MSA. In that order, the court also granted plaintiff's request to enter judgment against defendant for alimony arrears in the amount of $34,350. In a companion order of the same date, the court stated the award constituted the total arrears after 233 weeks of nonpayment between May 11, 2018 and November 9, 2023, and ordered credit of $600. The court "reject[ed] defendant's argument that his open durational alimony was contingent on him earning $75,000 annually," finding the MSA imputed defendant's income to be $75,000.

The court also denied in its entirety defendant's cross-motion to modify the spousal support amount and to make the adjustment retroactive to January 1, 2019. The court relied on the MSA's language as controlling, citing

6

applicable caselaw, and finding no basis to disregard "the sanctity of [the] private contract[]" between the parties as defendant failed to "demonstrate[] any unconscionability, fraud or overreaching in the agreement" or that the MSA's provisions were "unjust or inequitable." As defendant had never moved to adjust alimony before plaintiff filed for the FJOD, the court denied any application for retroactive consideration. The court further noted defendant provided no information regarding the nature of his April 2019 injury and never filed a Case Information Statement in response to plaintiff's application seeking alimony arrears.

The order granted plaintiff's request that defendant's arrears be payable out of defendant's share of plaintiff's pension, ordering a Qualified Domestic Relation Order be prepared to reflect this requirement.

Defendant filed a motion for reconsideration, arguing the MSA's designation of imputed income was not intended to control alimony, and reiterating that overtime was "[t]he sole basis upon which the alimony determination was made." He also claimed that he was not unemployed or under-employed voluntarily and the circumstances had changed, making his and plaintiff's base incomes "almost the same." Defendant argued the MSA and May 2019 consent order specifically identified his loss of overtime as a basis for

termination of alimony, "in addition to any other valid change in circumstance to [his] income." Defendant argued that his financial circumstances resulted in his losing his residence and requested that the court retroactively terminate his alimony obligation as "[i]t was unequivocal that [the parties'] intentions were that if [defendant's] overtime ended, [his] alimony responsibility would also end."

Plaintiff filed opposition, citing the language from the parties' 2019 consent order regarding the retroactive application only to the date of the filing of any request to modify or terminate alimony or child support awards. She argued that any of defendant's efforts "to eliminate his alimony arrears before he filed his cross-motion on or about October 25, 2023" were not litigated and "should be rejected."

Defendant provided a supplemental certification, indicating his prior attorney's illness and death "resulted in a great delay in securing any and all records that [he] could get to address the [c]ourt's concern when [he] initially opposed [plaintiff]'s claim for alimony." He indicated his homelessness and job loss further impeded his ability to locate necessary financial data and medical records. Defendant attached a medical examination report completed in connection with his workers' compensation case.

A-1711-23

On January 19, 2024, the court denied reconsideration. It reasoned defendant added "nothing new in the current application warranting reconsideration," noting defendant's January 14, 2020 motion, filed while he was represented by his former attorney, was "almost identical" to the relief sought in his later motion. The court found comparison of the two filings "directly rebut[ted]" defendant's argument that his prior attorney's death caused the delay and found no basis to entertain defendant's belated challenges.

## II.

Defendant now appeals the portions of the court's November 2023 orders compelling payment of $34,350 in alimony arrears, arguing the court erred in requiring alimony arrear payments through November 9, 2023. Specifically, defendant argues the parties "determined two events which would end" defendant's alimony obligation to plaintiff in their MSA: (1) conversion of the LJD to an FJOD; and (2) defendant's "health deterioration or his loss of overtime pay."

Defendant asserts that, after withdrawing his January 2020 application, "a great number of obstacles . . . delayed" his moving for relief until October 2023. He argues that the time of "the onset of the substantial change in circumstance . . . controls modifications of alimony." He also contends that

A-1711-23

because he withdrew without prejudice his January 2020 motion, that prior filing date allows for retroactive modification of his alimony obligation and adjustment of arrears to that date. Specifically, he claims his October 2023 cross-motion "relate[d]" back to the original motion, drawing an analogy to amendments to pleadings under Rule 4:9-3. Defendant asserts plaintiff acquiesced to defendant's declining to pay alimony for approximately four years, showing she had notice and awareness of defendant's changed circumstances, which also demonstrated alimony "was unnecessary."

Defendant additionally appeals the court's order denying reconsideration, arguing that he submitted a medical report confirming his work-related injuries and his Social Security award supporting his claim and thus "form[ing] the basis to reduce and/or terminate alimony."

Plaintiff reiterates her arguments made before the trial court, contending the MSA and March 2019 consent order amply support the court's denial of defendant's motion to retroactively modify or terminate alimony. Plaintiff asserts that defendant never litigated a motion to modify alimony, and his 2020 filing was withdrawn and dismissed, undermining any claim that it triggered the consent order's retroactivity provision.

A-1711-23

III.

This court's review of Family Part orders is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). Therefore, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[A]n appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (second alteration in original) (quoting Rova Farms, 65 N.J. at 484).

We review a trial court's decisions to modify or terminate alimony for an abuse of discretion. See Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993); Reese v. Weis, 430 N.J. Super. 552, 584 (App. Div. 2013). Conversely, we review de novo a family court's legal conclusions. See Thieme, 227 N.J. at 283.

"New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999). "[F]air agreements arrived at by mutual consent 'should not be unnecessarily or lightly disturbed.'" Edgerton v. Edgerton, 203 N.J. Super. 160, 171 (App. Div. 1985) (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)). "Agreements between separated spouses executed voluntarily and understandingly for the purpose of settling the issue of [alimony and child support] are specifically enforceable, but only to the extent that they are just and equitable." Quinn v. Quinn, 225 N.J. 34, 48 (2016) (alteration in original) (quoting Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970)).

A trial court possesses the equitable authority to modify an agreement upon a showing of changed circumstances, including "an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law." J.B. v. W.B., 215 N.J. 305, 327 (2013). Parties may agree on the circumstances constituting changed circumstances, and generally "the court should defer to the arrangements undertaken by the parties." Konzelman, 158 N.J. at 197.

We conclude the court did not err in granting plaintiff's application for alimony arrears and denying defendant's motion for retroactive termination or reduction of that amount. The court properly enforced the plain language of the MSA. The MSA provided for alimony based on agreed-upon imputed income for both parties. We discern no misuse of discretion in the family court's rejection of defendant's claim that the imputed income amounts were never intended to provide the basis for alimony calculations. On the contrary, the parties agreed to these amounts, which the MSA unambiguously provided would only be terminated or altered by "plaintiff obtaining a final judgment of absolute divorce or further order of the court as a result of a change in circumstances, including, but not limited to, the parties' respective health and defendant's ability to work overtime." There is no fair interpretation of this provision to suggest that a decline in defendant's health or overtime created a self-fulfilling right to reduction in alimony obviating the need for a court-ordered reduction.

The court appropriately enforced the language of the parties' MSA, finding defendant failed to demonstrate that "the negotiated and fully executed provisions of the MSA [we]re unjust or inequitable." The court appropriately applied the MSA terms to find alimony terminated at the entry of the FJOD on November 9, 2023. See Quinn, 225 N.J. at 52 (recognizing the trial court found

13

the plaintiff voluntarily and knowingly entered into an agreement designating circumstances triggering termination of alimony).

Importantly, the court terminated alimony based on plaintiff's motion for entry of the FJOD. It did not grant defendant's cross-motion, filed on October 25, 2023, months after plaintiff's initial filing. Thus, applying the terms of the MSA, the court did not err in calculating the amount of alimony arrears.

Further, the May 2019 consent order unambiguously provided that any alteration to the alimony set by the MSA upon a showing of changed circumstances would "only be retroactive to the filing date of such application." That defendant previously filed an application to terminate alimony years prior—and voluntarily withdrew that application before litigating it—would not warrant retroactive termination or adjustment of the alimony arrears.

We likewise conclude the court did not err in denying defendant's motion for reconsideration. We review the trial court's denial of a motion for reconsideration under an abuse of discretion standard. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "Motions for reconsideration are governed by Rule 4:49-2, which provides that the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022) (quoting Pitney

14

Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)). Reconsideration should be granted only if the court made its decision on a "palpably incorrect or irrational basis" or if the court failed to consider or "appreciate the significance of probative, competent evidence." Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)).

We discern no abuse of discretion in the court's denial of defendant's motion for reconsideration. It found defendant raised nothing new in the motion and reasoned defendant had all the resources and information necessary to make his application for modification of alimony since the time of his initial filing in 2020. We are satisfied the court analyzed defendant's arguments under the appropriate standard and did not misapply its discretion in denying reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15

A-1711-23