225 N.J. Super. 33 (1988)
541 A.2d 716
MILLY SUE ROSEN, PLAINTIFF-RESPONDENT,
v.
ARTHUR G. ROSEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 18, 1988.
Decided May 18, 1988.
*34 Before Judges J.H. COLEMAN and HAVEY.
Skoloff & Wolfe, for appellant (Francis W. Donahue, on the brief).
Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, for respondent (S.M. Chris Franzblau, of counsel and on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
In this matrimonial litigation, defendant Arthur G. Rosen appeals from a post-judgment order denying his motion to amend the parties' property settlement agreement incorporated into their judgment of divorce. Defendant sought to prepay a $375,000 obligation under the agreement due plaintiff on August 1, 1991. We now affirm.
The parties were divorced in 1981. A comprehensive property settlement agreement was incorporated into the divorce judgment which provided in part that defendant was to make a *35 lump sum payment to plaintiff in the amount of $375,000 on August 1, 1991, with 11% annual interest on the amount payable quarterly to plaintiff. If plaintiff remarried, the annual interest payment was to increase to 14%. No provision in the agreement permitted defendant to prepay all or part of the $375,000 amount prior to the August 1, 1991 payment date.
Defendant made his quarterly interest payments through April 1987. On May 1, 1987, defendant moved to amend the agreement to permit prepayment of the $375,000, essentially because under the 1986 revisions of the federal tax laws, the $41,250 interest payment he makes annually will no longer be deductible, or fully deductible, to him. See 26 U.S.C.A. § 163(h) (1986). Plaintiff opposed the motion and submitted the affidavit of a certified public accountant noting that defendant's $375,000 obligation was fully collateralized by his profit-sharing plans and as such, was comparable to AAA bonds which yielded an average of 6.75% as of May 19, 1987. The accountant also stated that in order for plaintiff to yield $41,250 on AAA bonds, she would need an investment of $611,111. The motion judge denied the request, concluding that "[t]here is no valid basis for modifying the agreement" and that "the prepayment requested by the defendant materially alters the agreement without consideration for same being paid to plaintiff."
On appeal defendant argues that denial of his motion was an abuse of discretion and that the reasons expressed by the motion judge for denying the motion are unsupported by the record. Defendant cites Lepis v. Lepis, 83 N.J. 139 (1980), for the proposition that changes in federal tax law constitute "changed circumstances" warranting modification of the property settlement agreement. We do not agree.
It is true Lepis recognizes as one of the "changed circumstances" that may warrant modification any "changes in federal income tax law." Id. at 151; see also Acheson v. Acheson, 24 N.J. Misc. 133, 141 (Ch. 1946). However, we read Lepis as applying the changed circumstance standard to the *36 modification of alimony and child support, not provisions in an agreement dealing with equitable distribution. See Lepis supra, 83 N.J. at 145-149. Moreover, N.J.S.A. 2A:34-23 empowers the court to effectuate an equitable distribution of property only upon the entry of a judgment of divorce. In contrast, the statute provides that alimony orders may be revised and altered "from time to time as circumstances may require." There is no provision in the statute for the amendment of equitable distribution judgments upon changed circumstances. See also Mahoney v. Mahoney, 91 N.J. 488, 498 (1982) (in contrast to alimony which may be adjusted after divorce to reflect unanticipated changes in the parties circumstances, a property division may not be adjusted).
Here, the provision in the agreement regarding the payment of the $375,000 was part of a complex distributive scheme of marital assets and as such is entitled to the same finality as any other judgment, subject to R. 4:50-1, under which relief from judgment may be granted on certain specified grounds. See Ganther v. Ganther, 153 N.J. Super. 226, 230-231 (App.Div. 1977); Pressler, Current N.J. Court Rules, Comment 1 to R. 4:50-1 (1988). Where no misconduct, fraud or unfairness is shown, such provisions have been held binding. See Barrie v. Barrie, 154 N.J. Super. 301, 308 (App.Div. 1977), certif. den. 75 N.J. 601 (1978); Ganther, supra, 153 N.J. Super. at 231.
However, courts have allowed modification of property settlement agreements under the catch-all paragraph (f) of R. 4:50-1, permitting modification for "any other reason justifying relief," where there is a showing of inequity and unfairness. See Edgerton v. Edgerton, 203 N.J. Super. 160, 173 (App.Div. 1985) (parties' mistake in including inherited property in property division); Castiglioni v. Castiglioni, 192 N.J. Super. 594, 597 (Ch.Div. 1984) (a post-judgment change in federal law making a husband's military pension subject to equitable distribution, effective retroactively, permitted reopening of divorce judgment). *37 But see Berlin v. Berlin, 200 N.J. Super. 275, 279-280 (Ch.Div. 1984) (a defendant-husband was not entitled to relief under R. 4:50-1(f) from judgment requiring sale of marital home three years after divorce on basis of plaintiff-wife's death, when defendant refused to comply with the provision for four years). Further, where there is a showing of fraud or misconduct by a spouse in failing to disclose the true worth of his or her assets, relief may be granted under R. 4:50-1(f) if the motion is made within a reasonable time. Palko v. Palko, 73 N.J. 395, 397-398 (1977). Of course, a motion under paragraph (f) is addressed to the sound discretion of the trial judge. Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966).
Here, defendant does not present a showing for relief from the final judgment under any of the provisions of R. 4:50-1, including paragraph (f). It is not contended that there was any fraud or mistake in the manner by which the assets were distributed. There is no dispute that the agreement as executed in 1981 was fair and equitable. Indeed, the agreement was advantageous to defendant since he benefitted from the 10-year deferral of the payment when the prevailing interest rate in 1981 and 1982 exceeded 20%, and he was required to pay only 11% to plaintiff.
Moreover, according to plaintiff's accountant, if the $375,000 debt was prepaid and plaintiff invested a similar sum in AAA bonds, her annual yield would be only 6.75% as compared to 11%. She would need $611,111 to yield the $41,250 she is presently receiving, and would receive her payments every six months instead of quarterly. While prepayment may benefit defendant because of the revisions in the tax laws, it would without question cost plaintiff a substantial sum based on present interest levels. Both parties bargained for the 10-year delay and, according to plaintiff, she structured her financial planning at the time of the agreement predicated on the expectation that the 11% annual yield, payable quarterly, would remain constant over the 10-year period.
*38 We are satisfied that permitting prepayment would constitute a material change in the distributive scheme agreed upon by the parties and in the circumstances would be inequitable. We therefore conclude that there is no basis under R. 4:50-1 to modify the agreement.
Affirmed.