**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1032-19T1

HEATHER REED SMITH
and HARRY SMITH,

      Plaintiffs-Respondents,

v.

THOMAS BOLTON,
GAIL BOLTON, MARK
BOLTON,

      Defendants-Respondents,

and

ALEXIS REED,

      Defendant-Appellant.

_____

          Submitted October 15, 2020 – Decided October 27, 2020

          Before Judges Whipple and Firko.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FD-04-1125-17.

Adinolfi, Molotsky, Burick, & Falkenstein, PA, attorneys for appellant (Kimberly A. Greenfield, of counsel and on the briefs; Julie R. Burick, on the briefs).

Berg & Pearson, PC, attorneys for respondents Thomas Bolton and Gail Bolton (Joy A. Pearson-Schneck, on the brief).

Andrew N. Yurick, attorney for respondents Heather Reed Smith and Harry Smith, joins in the brief of respondents Thomas Bolton and Gail Bolton.

PER CURIAM

In this non-dissolution, FD child custody and parenting time matter, the mother, defendant Alexis Heath Reed (Alexis),[1] appeals from an October 10, 2019 order entered in the Family Part denying her application under Rule 4:50-1 to be designated as the parent of primary residence (PPR) for her son, Max[2]. On July 17, 2019, a prior Family Part judge denied defendant's application for

---

[1] We refer to the parties by their first names for ease of reference and intending no disrespect.

[2] We use a fictious name for the minor child to protect his privacy and for ease of reference.

custody, or in the alternative, parenting time.  For the reasons that follow, we reverse and remand.[3]

## I.

We discern the following facts from the record.  Max was born in May 2011.  His parents, defendant and co-defendant Marc,[4] had a dating relationship but were never married.  In 2013, Alexis suffered an opioid use disorder and voluntarily admitted herself into a rehabilitation program.  Max was left in Marc's care.  The Division of Child Protection and Permanency (Division) received a referral on the family from Alexis's mother, plaintiff Heather Reed Smith (Heather), and commenced an investigation.  However, the Division did not pursue any litigation, and on February 11, 2013, Marc was awarded custody of Max by default.[5]  There was no provision for parenting time set forth in the

---

[3]  While this appeal was pending, Alexis filed a motion under Rule 2:9-1(a) for a limited remand to allow the Family Part judge to proceed with a plenary hearing scheduled for October 26, 2020 on counterclaim applications filed by Alexis and the child's father, Marc W. Bolton (Marc), under docket number FD-04-1125-17.  On October 7, 2020, we denied Alexis's motion for a limited remand.

[4]  Marc has not filed an appeal.  Throughout the record, he is referred to as "Marc" and "Mark."  We will refer to him as "Marc" for purposes of consistency throughout this opinion.

[5]  This order was entered in the matter encaptioned, "Marc W. Bolton v. Alexis R. Reed," under docket number FD-04-1664-13.

3

order.  Eventually, Alexis and Marc had parenting time with Max on alternating weekends.

After completing rehabilitation, Alexis moved back in with Marc. Regrettably, in March 2014, Alexis relapsed, and she, along with Marc and Max, moved back in with Marc's parents, Thomas and Gail Bolton, who reside in Marlton.  This living arrangement continued until 2016 when Alexis and Marc ended their relationship.  Alexis agreed to leave Max in Thomas and Gail's care while she tried to get sober.  In the meantime, Marc struggled with a heroin addiction.  As a result of robbing his mother, Gail, Marc was incarcerated from September 2016 to March 2017, followed by a six-month rehabilitation program.

The maternal grandmother, Heather, and the paternal grandparents, Gail and Thomas, filed cross-applications seeking custody of Max.  On November 28, 2016, the Family Part judge awarded temporary joint custody of Max to Gail and Thomas and designated them as PPR.  Heather and her husband Harry Smith were designated as the parents of alternate residence (PAR).[6]  The judge noted in the order that:  "This arrangement is for education/medical purposes only." The November 28, 2016 order did not delineate any parenting time for Alexis.

---

[6]  This order was entered in the matter encaptioned, "Heather Reed Smith v. Thomas Bolton," under docket number FD-04-1225-17.

A-1032-19T1

Since the entry of the November 28, 2016 order, Alexis has exercised unsupervised parenting time with Max one day or afternoon per week, Tuesday from 8:00 a.m. until 8:00 p.m. during the summer months, and afterschool until 8:00 p.m. during the school year. In addition, Alexis had unsupervised parenting time every other weekend from Friday morning at 9:30 a.m. or 10:00 a.m. overnight until Sunday evening at 7:30 p.m. or 8:00 p.m. On December 27, 2017, Alexis got married, and Max spent several overnights each week with her and his stepfather. The record shows the grandparents and Alexis had been amicable and flexible with parenting time.

Alexis and her husband purchased a home in Cherry Hill where Max has his own bedroom and bathroom. The home has a backyard and is located across the street from Johnson Elementary School, where Alexis planned to enroll Max if she was awarded custody. According to Alexis, she was ready, willing, and able to assume full caretaking responsibilities for her son. Alexis claims she has been sober since January 2017. On June 12, 2019, Alexis filed an application under docket number FD-04-1125-17 to be designated as Max's PPR and Marc be designated as PAR. In the alternative, Alexis sought a parenting time schedule.[7]

---

[7] The June 12, 2019 application is not included in the appendix.

Alexis did not anticipate opposition to the application from any of the grandparents, and she thought that Marc acquiesced in her request. Therefore, Alexis proceeded as a self-represented litigant at the July 15, 2019 hearing. However, both sets of grandparents retained counsel and opposed Alexis's requested change in custody of Max. In addition, Marc revoked his consent to designate Alexis as PPR. At the onset of the hearing, Alexis informed the judge she sought custody and parenting time. At the hearing, after swearing in the parties, the judge confirmed Alexis's application was to be designated PPR for Max and in the alternative, Alexis sought a parenting time schedule. Counsel for the maternal and paternal grandparents requested mediation to address the issues raised in Alexis's application. The judge confirmed on the record what the parenting time schedule between Alexis and Max was and that there had been "no incidents." Without addressing the merits of the application and prior to hearing testimony, the judge stated:

> . . . So what do we need mediation for? All we . . . have to do is work toward a baby-step program where [m]om and [d]ad already have this parenting time and we can gradually then progress, progress so that they're going to share joint [legal] custody and grandparents are going to fade back.

A-1032-19T1

The judge commented that "[t]he court mediator won't give you the time you need," and . . . "a mediator's not going to do anything other than I'm doing right now." Thereafter the judge queried the parents:

> What works for you, [d]ad?
>
> What works for you, [m]om?
>
> [C]an we have, like, an expanded time for the summer for [m]om and [d]ad if their work schedule permits and then come the fall we'll figure out where the child's going to be registered for school?

Alexis responded that she discussed these issues with Marc and she now lives in an "A-plus-plus-plus school district," which was the reason she sought residential custody. Further, Alexis testified that she "can now provide" for Max and wanted him "to get the best of everything." In her testimony, Alexis stated in the past two years, she and Marc "have gotten our act together" and she would not withhold Max from seeing his grandparents.

The judge then stated: "You've got to figure out a solution for keeping him in the school, transferring custody to [m]om and [d]ad, but allowing there to be some language in the order that keeps him in his existing school." The parties and counsel were instructed by the judge to go out into the hallway and craft a consent order along these lines.

A-1032-19T1

Later that day, a consent order was prepared and presented to the judge on the record for approval. The follow colloquy ensued:

> THE COURT: All right. I'm going to ask Alexis and Marc, did you read this [c]onsent [o]rder?
>
> [ALEXIS]: Yes.
>
> [MARC]: Yes.
>
> THE COURT: Do you understand it?
>
> [MARC]: Yes.
>
> THE COURT: You don't have lawyers. So did you feel intimidated by these two?
>
> [MARC]: No.
>
> THE COURT: Okay. You did a little bit?
>
> [ALEXIS]: Absolutely.
>
> THE COURT: Did you feel that you were pressured into this agreement?
>
> Okay. Then I can't accept it, counsel. Nice try. Okay.
>
> [ALEXIS]: Thank you.
>
> THE COURT: So -- so we went through all this and you didn't feel comfortable with this?
>
> [ALEXIS]: I wasn't aware of lawyers until we got here today.

A-1032-19T1

THE COURT: It doesn't matter whether you were aware of them. Do you agree with this [c]onsent [o]rder?

[ALEXIS]: I'll agree to it.

THE COURT: Okay. So then --

[ALEXIS]: But I'm not being represented and I don't find that fair . . . .

THE COURT: Well, what do you want me to do, Alexis? What do you want to do?

[ALEXIS]: I'm seeking counsel.

THE COURT: So you don't want to do this agreement until you seek counsel?

[ALEXIS]: Correct.

THE COURT: Can I ask you why you agreed to this, why you signed it, if you don't have a lawyer and you want one?

[ALEXIS]: Because I didn't know I had a choice to not sign it.

THE COURT: Well, this -- this agreement says that all parties are to be joint custodians for M[ax]. So these other people were agreeing to give you back joint custody, I guess -- okay -- which now that's out of -- that's out of the picture. We're not doing that, okay?

[ALEXIS]: We can do it. It's fine.

THE COURT: No, I -- I'm not -- are you kidding? You think I'm going to sit here and accept an agreement

9

where you just said on the record that you don't feel comfortable and you want to get a lawyer? And I have no problem with that, ma'am. You are entitled to do that, okay?

I'm telling you right now if I were to hear this case today as it sits here, your application would be denied to be -- to get custody of your son. And the reason is exactly what I said before, that for four years this boy grew up with them -- okay? -- in their house, grew roots, went to school. I'm not changing his school. I already told you all that.

So if you were able to weasel out of them an agreement that gives you joint or partial custody of this boy, you made a lot more progress than you would have made just with me hearing the case because they would have won.

But I'm willing to just say okay, let's have a hearing. I'll give you a chance to get a lawyer if you want to do that. If you want a little more time to think about it, you can do that too. I mean --

[ALEXIS]: Probably.

THE COURT: Pardon me?

[ALEXIS]: Yes.

THE COURT: You want more time. Okay. Well, what I can do, folks -- you've worked very hard on reaching this agreement. I will white out my name. I'll give everybody a copy of the consent agreement. You can take it to a lawyer to look at if you like, if you want to. That's fine. If not, I'll give you a date to have your plenary hearing, if I think there is one. I don't know

that there even is enough here to -- see, here's the problem.

I know -- I know you didn't know there were lawyers until you walked in here, but that's beside the point because the lawyers didn't really say a whole lot of anything. All they did was facilitate the mediation.

The problem is, ma'am, that you have an obligation to make what's called a prima facie showing to the [c]ourt before you get a plenary hearing. You haven't done that. Your papers haven't done that.

I can let you argue it today, if you want, to tell me your reasons. Or I can withdraw your application, which is probably the easiest thing to do, and let you start over after you get a lawyer, okay?

The judge gave Alexis an opportunity to explain why she wanted joint custody of Max and to be designated PPR. Alexis answered: "Because in the best interest of the child, isn't that always to be with the parents at the end if they are doing well and provide for the child the same care or better than what is currently given?" Alexis added, "I just feel that I need to speak with a lawyer."

The judge denied Alexis's application for joint custody and being named PPR. In an oral decision, the judge contradicted her earlier pronouncement that custody should be transferred to the parents and found Alexis did not present prima facie evidence warranting a plenary hearing to transfer custody of Max to her. Further, the judge stated "[t]here's no change in the current situation and

11

the current court orders as to custody and where M[ax] resides." The judge issued a Uniform Summary Support Order (USSO)[8] two days later on July 17, 2019, which simply stated: "Alexis Reed's application for joint custody and to be the [PPR] is denied. Ms. Reed has not met the prima facie burden to warrant a custody hearing." The judge made no ruling on the alternative relief sought by Alexis for a parenting time schedule.

Alexis retained counsel and filed an application and motion under Rule 4:50-1 to vacate the July 17, 2019 order because the judge failed to make the requisite findings of fact and conclusions of law and reached a "summary conclusion" that she failed to establish changed circumstances to warrant a change of custody. Again, Alexis sought to be designated as PPR and Marc as PAR. In the alternative, Alexis sought a plenary hearing as to custody and parenting time for Max as well as counsel fees.

Both sets of grandparents filed cross-applications requesting that Alexis's application and motion to vacate the July 17, 2019 order be denied. Collectively, the grandparents contended that "[a]lthough it is commendable that [Alexis] was able to become clean, a change in custody and parenting time is not warranted

---

[8] A USSO is a form order utilized to process child support payments and the automated payment center that is supervised by probation services. R. 5:7-4(b).

A-1032-19T1

at this time." They also asserted it would not be in Max's best interests to modify custody because the grandparents have been the "only consistent and stable day-to-day parents that he knows" and any change "would impact his school."

On October 10, 2019, a different judge heard the application, motion, and cross-applications. Initially, the judge commented that Alexis's application was out of time and that he would review the record and Court Smart in order to ascertain the prior judge's findings. The judge advised the parties and counsel to return in the afternoon.

Later that day, the judge recalled the parties and counsel on the record and confirmed nothing was found on Court Smart relative to any findings being made on Alexis's application by the prior judge. In denying Alexis's Rule 4:50-1 application, the judge held that "[Alexis] didn't do what she was supposed to do." He went on to say:

> [T]he defendant [Alexis] applies . . . to essentially vacate the order of [the prior] [j]udge on July 15th, 2019 on the basis that [the prior] [j]udge didn't make sufficient findings of fact and maybe conclusions of law in order to make the decisions -- the decisions that were made in that order . . . the argument, which is, really, the essence of -- of the application here, is that [the prior] [j]udge didn't make certain findings and -- and I guess, you know, of course, the -- the defendant, [Alexis], is out of time to -- to appeal the matter, but there's a reason these time limits exist . . . but I don't

find that a mistake was made. I find that it was a -- it was a well[-]reasoned determination.

Instead of addressing the merits of Alexis's prima facie case, the judge encouraged her to file the present appeal and commented: "We all know that what you do is you go and they say [']the [j]udge didn't make findings, I'm remanding,['] and you come back and it starts over again." A memorializing order was entered on October 10, 2019.

This appeal followed.[9] On appeal, Alexis argues the prior judge erred by: (1) not issuing either written or oral findings of fact and conclusions of law in compliance with Rule 1:7-4(a); (2) not finding that she established a prima facie showing of changed circumstances relative to custody and parenting time; and (3) not granting a plenary hearing. Alexis further contends that the subsequent judge erred and abused his discretion by denying her Rule 4:50-1 application to vacate the July 25, 2019 order. The grandparents seek affirmance.

II.

In any custody or parenting time dispute, "it is well settled that the court's primary consideration is the best interests of the child[]." Hand v. Hand, 391

---

[9] The Notice of Appeal was filed on November 8, 2019, from the October 10, 2019 order. Counsel for Alexis included additional information and court proceedings occurring after that date in the brief. We are not considering same in our opinion. See Rule 2:6-2(a).

N.J. Super. 102, 105 (App. Div. 2007). Thus, a parent seeking to modify a parenting time schedule "bear[s] the threshold burden of showing changed circumstances which would affect the welfare of the child[]." Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div.) 1993) (citing Sheehan v. Sheehan, 51 N.J. Super. 276, 287 (App. Div. 1958)). See also Lepis v. Lepis, 83 N.J. 139, 157 (1980).

To determine whether the requisite changed circumstances exist, the court must consider the circumstances that existed at the time the current order was entered. Sheehan, 51 N.J. Super. at 287-88. Then, the court can "ascertain what motivated the original judgment and determine whether there has been any change in circumstances." Id. at 288. Once the moving party makes a prima facie showing of changed circumstances, only then is the moving party entitled to "a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing . . . order." Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009).

In general, because the Family Part has special expertise in family matters and the opportunity to observe witnesses first-hand, we defer to factual determinations made by the trial court as long as they are "supported by

adequate, substantial, and credible evidence in the record."  Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  However, we review the Family Part's interpretation of the law de novo.  Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

Notably, a decision concerning custody and parenting time rests in "the sound discretion of the trial courts."  Pascale v. Pascale, 140 N.J. 583, 611 (1995); see Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 157 (App. Div. 2003) ("Judges of the Family Part are regularly called upon to make exceedingly difficult and delicate decisions as to the best interest of the children, and we are obliged to give deference to both their findings and the exercise of their sound discretion.").

Family "judges are under a duty to make findings of fact and to state reasons in support of their conclusions."  Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996); see R. 1:7-4(a).  "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion."  Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)).  "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4."  Curtis v. Finneran, 83 N.J. 563, 570 (1980).

16

Here, the first motion judge failed to make any findings of fact and conclusions of law as required by Rule 1:7-4(a). In J.G. v. J.H., 457 N.J. Super. 365, 368 (App. Div. 2019), we emphasized that "the welfare of children is paramount whether the parents are married, divorced or never-married . . . ." Moreover, we underscored that "[a] parenting time decision . . . made without an evidential basis, without examination and cross-examination of lay and expert witnesses, and without a statement of reasons is untenable in the extreme." Id. at 373 (quoting Fusco v. Fusco, 186 N.J. Super. 321, 327 (App. Div. 1982). Therefore, the July 17, 2019 order is reversed.

We also conclude that the subsequent judge abused his discretion in not granting Rule 4:50-1 relief to Alexis. The catch-all terms of Rule 4:50-1(f)[10] are founded upon a showing of inequity and unfairness. See Rosen v. Rosen, 225 N.J. Super. 33, 36 (App. Div. 1988). Indeed, the very essence of subsection (f) is to provide recourse in exceptional and compelling circumstances, for which the relief may be "as expansive as the need to achieve equity and justice." Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966). Whether such exceptional

---

[10] Rule 4:50-1 provides: "On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: . . . [subsection] (f) any other reason justifying relief from the operation of the judgment or order."

circumstances are present hinges upon the totality of the facts and is assessed on a case-by-case basis. Ibid.; In re Guardianship of J.N.H., 172 N.J. 440, 473 (2002). In order to obtain relief, the movant must demonstrate that the circumstances are exceptional and that continued enforcement of the judgment would be "unjust, oppressive or inequitable." Quagliato v. Bodner, 115 N.J. Super. 133, 138 (App. Div. 1971).

The denial of the Rule 4:50-1 motion was in error. The issue of custody and parenting time is paramount, and enforcement of the October 10, 2019 order meets the "unjust, oppressive or inequitable" criteria. In light of the manifest deficiencies in the prior judge's decision regarding custody and not addressing parenting time at all, the subsequent judge was presented with substantive issues in a proper manner for the court's determination. Consequently, we reverse the October 10, 2019 order.

We are thus compelled to remand this matter to the Family Part to develop a reviewable appellate record, which may require the judge to order a period of discovery and, if warranted, conduct a plenary hearing to make factual findings and resolve any disputed material facts. Judicial economy may warrant conducting one plenary hearing to address both the application filed by Alexis

and the application more recently filed by Marc. We defer to the Family Part judge for a determination on that issue.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION