**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0960-20

JEFFREY R. PESOT,

    Plaintiff-Appellant,

v.

SUSAN PULEO, f/k/a
SUSAN PESOT,

    Defendant-Respondent.

_____

Submitted December 15, 2021 – Decided January 24, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0195-08.

Jeffrey R. Pesot, appellant pro se.

Zimmerman Law Group, attorneys for respondent (Jean-Marc Zimmerman, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff/ex-husband appeals from the November 2, 2020 Family Part order denying his motion to modify the parties' marital settlement agreement (MSA) and his request for a plenary hearing. We affirm.

We glean these facts from the record. The parties were married on August 23, 2003. They have two children together, one born prior to the marriage in 1999, and the other born after the marriage in 2004. Defendant/ex-wife has two older children from a prior marriage.

Approximately one month before the marriage, on July 29, 2003, the parties entered into a prenuptial agreement delineating their rights in any property in which either party had an interest, as well as the terms for property disposition in the event of the marriage's dissolution. The agreement specified that at the time, plaintiff had an income of over $1.1 million[1] and a sixty-eight percent ownership interest in a company valued at $3.5 million. In contrast, defendant had no income.

The marriage was relatively short lived, lasting less than five years. The parties divorced on February 25, 2008, by way of a final judgment of divorce

_____

[1] Plaintiff's 2002 federal income tax return attached to the prenuptial agreement reflected this income.

(FJOD) which incorporated an MSA of the same date. The MSA expressly "modified" certain provisions in the prenuptial agreement and acknowledged that "any provisions . . . not so modified . . . remain[ed] in full force and effect." Both parties were represented by counsel in the divorce proceedings and the negotiation of the MSA, and both agreed it was "fair, equitable and satisfactory." The parties also acknowledged that the MSA was "entered into voluntarily and . . . not the result of any undue influence, fraud, or duress."

The MSA addressed alimony, equitable distribution, child support, custody and parenting time, as well as other issues related to the dissolution of the marriage. Regarding equitable distribution, paragraphs thirty-eight and thirty-nine of the MSA provided plaintiff would pay defendant "a lump sum payment" of $1,015,000 in exchange for defendant waiving "any interest she may have" in plaintiff's investment "in a Hedge Fund."[2] Pursuant to paragraph thirty-nine, the $1,015,000 lump sum payment was payable to defendant as follows:

> The sum of $100,000 shall be payable once the marital
> home is under a fully-signed contract for sale and the
> mortgage contingencies have been met . . . . The

---

[2] Defendant also waived her interest in a residence the parties owned in Montana but the "[d]eed transferring her interest" was not to be recorded until she "received in full her equitable distribution payment of $1,015,000[]."

balance of $915,000[] shall be paid out of the closing proceeds upon the sale of the former marital home. If there is a shortfall in this payment after applying all of the net proceeds and after reimbursing [plaintiff] for any credit due him from paragraph [twenty-five,[3]] the balance shall be paid as follows: up to $100,000 within [twelve] months; anything above $100,000 up to $200,000 within [twenty-four] months; anything above $200,000 within [thirty-six] months with [five percent] per annum interest applied to any outstanding balance from the date of closing to the date of payment.[4]

After the divorce, plaintiff failed to comply with paragraph thirty-nine of the MSA, resulting in defendant filing numerous enforcement actions leading to the entry of four judgments against plaintiff in favor of defendant: a February 7, 2012 judgment for $100,000; a February 22, 2013 judgment for $100,000; an October 31, 2013 judgment for $100,000; and a December 12, 2016 judgment for $477,488.40. All four judgments remain unpaid.

In the statement of reasons accompanying the December 12, 2016 order of judgment, in granting defendant's request to enforce paragraph thirty-nine of the MSA, the motion judge recounted that upon the "September 8, 2011" sale of

---

[3] Paragraph twenty-five pertained to the emancipation of the children.

[4] In contrast, the prenuptial agreement specified that "[i]n an [e]vent of [m]arital [d]iscord," "[t]he marital residence shall be sold" with "the greater of fifteen percent . . . of the net proceeds or . . . [$100,000]" allocated to defendant "and the remainder to [plaintiff]."

A-0960-20

the former marital home, defendant "received $393,009.33 . . . at [the] closing" and was owed "$477,488.40 representing the amount still owed to her from the lump sum [equitable distribution] payment in the MSA less the judgments" totaling $300,000.00, including interest. In that regard, the judge rejected plaintiff's claim that the "downturn in his business" should excuse him from "paying [defendant] the balance of the equitable distribution" she was owed. See Rosen v. Rosen, 225 N.J. Super. 33, 36 (App. Div. 1988) ("[I]n contrast to alimony which may be adjusted after divorce to reflect unanticipated changes in the parties['] circumstances, a property division may not be adjusted." (citing Mahoney v. Mahoney, 91 N.J. 488, 498 (1982))).

The judge also rejected plaintiff's claim that the MSA should be invalidated based on fraud, explaining:

> [Plaintiff] stated his lump sum obligation should be dismissed because of fraud and nondisclosure on the part of [defendant] for her transfers of money into the parties' daughter's bank account. [Plaintiff] contended he never knew about these accounts and this information was never disclosed during any of the parties' negotiations and had he [known] about the account, he would not have agreed to the terms in the MSA. The [c]ourt through its own initiative found and reviewed its April 1, 2015 decision from the parties' plenary hearing in which the accounts [plaintiff] raises in the present motion were submitted. During . . . [o]ral [a]rgument, [plaintiff] acknowledged that these accounts had been addressed in the past. . . . The [c]ourt

5

> is satisfied [plaintiff] has had plenty of opportunities to
> raise issues regarding accounts and finds [defendant] is
> entitled to the lump sum payment which was agreed to
> by both parties and their respective counsels.

Plaintiff never appealed the December 12, 2016 order of judgment.

In an effort to collect on the December 12, 2016 judgment, on February 18, 2020, defendant served an information subpoena requesting financial information from plaintiff. When plaintiff failed to respond, defendant moved to compel an answer, which motion was granted on July 10, 2020. Plaintiff failed to comply with the July 10, 2020 order, resulting in the court issuing an order on September 11, 2020, finding plaintiff in violation of litigant's rights and requiring him to respond to the subpoena.

On September 18, 2020, plaintiff moved to modify the MSA, contending it was no longer equitable given the respective financial circumstances of the parties. Specifically, plaintiff again claimed he was experiencing financial difficulties while defendant had married a wealthy individual. Plaintiff also repeated his prior allegation that defendant had fraudulently concealed assets at the time the MSA was entered in 2008. Relying on paragraph forty-four of the MSA, which acknowledged that each party relied upon the other's "representation that there [were] no other marital assets subject to equitable distribution" and would be "entitled to set aside the related portions" of the MSA

6

"[s]hould a party locate any marital assets or income which were not disclosed by the other party," plaintiff claimed defendant concealed an $80,000 bank account in their older child's name and that he only learned of the alleged fraud during a child support modification hearing in 2014. Plaintiff urged the court to reduce the $1,015,000 equitable distribution lump sum payment to the $100,000 payment specified in the prenuptial agreement as defendant's share of the proceeds from the sale of the marital residence. In response, defendant denied marrying the individual and moved to enforce the information subpoena.

Oral argument on the motions was conducted on October, 30, 2020. In a November 2, 2020 order, the judge denied plaintiff's motion. In an accompanying written statement or reasons, the judge found no "factual or legal" basis to set aside the MSA. Regarding the purported change in financial circumstances, the judge explained neither "[t]he relationship between defendant and a third-party" nor "the fact that plaintiff allege[d] . . . he ha[d] fallen on hard times financially" was relevant "to the validity of the MSA." See Rosen, 225 N.J. Super. at 36.

Further, in rejecting plaintiff's claim of "fraud, duress and unconscionability" based on the alleged "non-disclosure of an asset," the judge relied on paragraph sixty-one of the MSA in which the parties expressly

A-0960-20

acknowledged that they had "not exchanged discovery and undisclosed assets may exist that [were] subject to equitable distribution" but were "willing to proceed" with the agreement "without this information."  See Petersen v. Petersen, 85 N.J. 638, 642 (1981) (recognizing "matrimonial agreements between spouses . . . which are fair and just, fall within the category of contracts enforceable in equity" and are "entitled to considerable weight").  The judge noted "[t]he MSA also took into consideration the parties' premarital agreement from 2003."

Additionally, the judge relied heavily on the December 12, 2016 order in which the identical claim was raised and rejected by a different judge.  Thus, the judge concluded plaintiff was barred by "the doctrines of res judicata and la[]ches" from requesting "any further . . . relief in this regard."  See Velasquez v. Franz, 123 N.J. 498, 505 (1991) ("[T]he doctrine of res judicata provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." (citing Roberts v. Goldner, 79 N.J. 82, 85 (1979))); Knorr v. Smeal, 178 N.J. 169, 180-81 (2003) ("[The doctrine of laches] is invoked to deny a party enforcement of a known right when the party engages

A-0960-20

in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party.").

On the other hand, in granting defendant's motion to enforce the information subpoena, the judge explained:

> Despite the court's enforcement orders, plaintiff continues to portray himself as a victim and conflates his lack of compliance with the information subpoena with his inability to pay the judgments previously entered by the court in favor of defendant for plaintiff's failure to comply with certain MSA provisions. The issue is not ability to pay; it is compliance with a lawfully issued information subpoena routinely used by creditors to assist in collecting judgments pursuant to court rules.

This appeal followed.

On appeal, plaintiff, who represented himself before the trial court and here on appeal, reiterates that "the existence and concealment of [the account in their daughter's name] constitutes fraud and deceit within the meaning of procedural unconscionability, rendering the further application of the MSA unjust." Plaintiff urges the reversal of the judge's decision and the reduction of the equitable distribution payment in the MSA to the $100,000 allocated to plaintiff in the prenuptial agreement upon the sale of the marital residence.

We have considered these contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant

A-0960-20

discussion in a written opinion.  R. 2:11-3(e)(1)(E).  We add the following brief comments.

Our limited scope of review of Family Part orders is well established.  See Cesare v. Cesare, 154 N.J. 394, 411 (1998).  We accord deference to Family Part judges due to their "special jurisdiction and expertise" in the area of family law.  Id. at 413.  We will not disturb the judge's factual findings and legal conclusions "'unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv.'s Ins. Co., 65 N.J. 474, 484 (1974)).  Conversely, a trial judge's decision on a purely legal issue is subject to de novo review.  Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007).

The doctrine of unclean hands denies relief to a wrongdoer.  Borough of Princeton v. Bd. of Chosen Freeholders of Mercer Cnty., 169 N.J. 135, 158 (2001).  "[W]hile general iniquitous conduct will not operate to bar plaintiff from relief by reason of unclean hands, iniquitous conduct relating to the particular matter or transaction to which judicial protection is sought will operate to bar relief."  Pollino v. Pollino, 39 N.J. Super. 294, 299 (Ch. Div. 1956).  "In this respect, equity follows the common law precept that no one shall

be allowed to benefit by his own wrongdoing.  Thus, where the bad faith, fraud or unconscionable acts of a petitioner form the basis of his lawsuit, equity will deny him its remedies."  Rolnick v. Rolnick, 290 N.J. Super. 35, 45 (App. Div. 1996) (citations omitted).

We are satisfied the judge's factual findings are amply supported by substantial credible evidence in the record and his legal conclusions are unassailable.  Thus, we discern no abuse of discretion.  Additionally, given plaintiff's contumacious conduct, the doctrine of unclean hands is another ground for denying relief to plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11