**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1526-24

DAVID G. GIONCO,

     Plaintiff-Respondent,

v.

NANCY K. GIONCO,

     Defendant-Appellant.

_____

Submitted December 8, 2025 – Decided February 3, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0017-19.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the briefs).

Fox Rothschild LLP, attorneys for respondent (Lindsay A. Heller, of counsel and on the brief; Julia B. Heasley, on the brief).

PER CURIAM

Defendant Nancy K. Gionco appeals from Family Part orders denying her motion for post-judgment relief requesting modification to the equitable distribution provisions of the parties Marital Settlement Agreement (MSA) incorporated into their Final Judgment of Divorce (FJD) and denying her subsequent motion for reconsideration. Defendant further appeals the court's award of counsel fees to plaintiff David G. Gionco. Having considered the arguments in light of the record and applicable legal principles, we affirm.

I.

The parties were married in 1991 and have five children. They initially filed for divorce in 2015, reconciled in 2016, and ultimately divorced on September 25, 2018. The divorce judgment incorporated an MSA dated August 31, 2018. In the years following the divorce, both parties continued to communicate regarding financial matters stemming from the MSA. In May 2024, approximately five years and eight months after the FJD, defendant moved to modify the FJD. Defendant alleged during the divorce plaintiff made fraudulent transfers of marital assets comprised of his company stock options into a trust entitled "Gionco Descendants 2018 Trust," (Trust) and failed to disclose and improperly utilized marital funds to purchase real property in Mendham (the property) in his sole name prior to the parties FJD. Defendant

2

also claimed she had not received her share of certain retirement plans held by plaintiff, although she did not expressly seek relief for this in her motion, instead raising the point in a certification.

Plaintiff opposed the motion, asserting that defendant was aware of and involved in creating the Trust; the Trust was referenced in the MSA; she had received all marital assets due under the MSA; and because he purchased the property after the complaint for divorce was filed, it was not subject to equitable distribution. Plaintiff also claimed defendant had received her portion of the marital retirement accounts as required by the MSA. Plaintiff cross-moved for sanctions for frivolous litigation, including counsel fees.

The trial court denied defendant's motion, which not only included her request for modification of the MSA but also requested an order requiring plaintiff to produce documents, discovery, for a hearing, and attorney's fees. The court granted plaintiff's cross-motion for counsel fees.

Regarding the allegations of fraud in connection with the creation and funding of the Trust, the court found the defendant was both aware of and involved in establishing the Trust. The court noted documentary evidence in the motion record, including emails and Trust documents supplied by plaintiff to defendant, demonstrated defendant knew plaintiff's stock options would fund

3

the Trust and that she received related correspondence and signed documents to effectuate the Trust. The court found there was no persuasive evidence that defendant lacked knowledge of the creation of the Trust or did not consent to its funding with plaintiff's stock options. The court further observed her claims to the contrary were contradicted by the record, including her own communications consenting to the Trust being used for the children's college expenses. The court also found defendant's assertion of unequal bargaining power to be unsupported, noting that she was an accountant, was represented by counsel, and actively participated in drafting the MSA.

With respect to the allegations surrounding the property, the court found plaintiff purchased it after the date of the divorce complaint, using his personal checking account funded with post-complaint earnings. It determined the property was non-marital and not subject to equitable distribution. The court determined defendant provided only a deed as evidence and failed to provide sufficient facts supporting a prima facie showing that marital funds were used to acquire the property or to rebut plaintiff's claims, which he supported with bank statements and other documents.

In its ruling on counsel fees, the trial court emphasized the lack of good faith in defendant's litigation conduct. The court observed her filings included

A-1526-24

incomplete documentation, specifically omitting portions of an email chain which undermined her claims she did not consent to and lack knowledge of the creation and funding of the Trust. Additionally, the court found her litigation positions and shifting arguments were not advanced with reasonable or sufficient factual support. The court determined defendant's legal positions to be frivolous and assessed counsel fees against her for $10,156.90, noting defendant's lack of good faith and failure to establish a prima facie case of fraud or breach of the MSA.

Defendant moved for reconsideration, raising arguments related to alleged coercion regarding the funding of the Trust and improper calculations of equitable distribution regarding plaintiff's retirement account. By order of January 24, 2025, the trial court denied reconsideration, reasoning that defendant's new arguments were required to be raised in her initial motion, and awarded plaintiff additional counsel fees of $8,654.17.

The court rejected defendant's assertions regarding distribution of plaintiff's retirement account, finding she failed to raise the issue properly as it was not set forth in the relief demanded in her original motion. The court again noted a lack of basis for claims of fraud, coercion, or commingling of marital assets, and reaffirmed its initial findings surrounding the Trust and the property.

5

The court concluded defendant essentially sought to relitigate matters already ruled upon without presenting any new previously undiscovered facts or demonstrating that the court's prior decision was based on error or overlooked evidence. The court partially based the additional award of counsel fees on the need to deter defendant from submitting further frivolous and unsupported filings.

On appeal, defendant contends the court erred in denying defendant's motion for post-judgment relief and denying reconsideration, contending disputed material facts existed in the record warranting discovery and a plenary hearing concerning (1) whether defendant knowingly and voluntarily consented to the funding of the Trust with marital assets; (2) whether plaintiff purchased the Mendham property with marital assets; and (3) whether defendant received her complete share of plaintiff's pension. Defendant further contends the court misapplied or failed to properly weigh issues of fraud, consent, coercion, and unequal bargaining power; and the award of attorney's fees against her was not justified as there was no finding that defendant's conduct amounted to frivolous litigation under New Jersey law.

II.

Our review of a Family Part court's findings is limited. We "afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Under that deferential standard of review, we are bound to uphold a finding that is supported by sufficient credible evidence in the record." Moynihan v. Lynch, 250 N.J. 60, 90 (2022) (citing Cesare, 154 N.J. at 413).. "We will reverse only if we find the [court] clearly abused [its] discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012) (citing Gonzalez–Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)).

Defendant claims the MSA should be "modified" because plaintiff committed fraud by (1) "failing to disclose $1,000,000 in [marital] stock options" were used to fund the Trust and (2) failing to disclose he purchased the Mendham property with "marital funds." In addition, defendant requested enforcement of the FJD concerning distribution of her portion of the plaintiff's pension/retirement account she claims was never distributed to her. Defendant asserts she raised sufficient prima facie evidence of fraud and enforcement that required the trial court to order discovery and a plenary hearing.

7

Defendant's motion requested "modification" of the FJD due to plaintiff's alleged fraud surrounding the monies/assets used to fund the Trust and the funds used to purchase the real property in dispute. We note "[t]here is no provision under N.J.S.A. 2A:34-23 for the [modification] of equitable distribution judgments upon changed circumstances." Rosen v. Rosen, 225 N.J. Super. 33, 36 (App. Div. 1988); see also Mahoney v. Mahoney, 91 N.J. 488, 498 (1982) (in contrast to alimony which may be adjusted after divorce to reflect unanticipated changes in the parties circumstances, a property division may not be adjusted).

> Any inequities occasioned by the non-disclosure of [an] asset in the marital settlement may be remedied by the familiar principles of matrimonial law. Rosen [at] 225 N.J. Super. 37 . . . ("where there is a showing of fraud or misconduct by a spouse in failing to disclose [their] assets, relief may be granted"), certif. denied, 111 N.J. 649 (1988) . . . .
>
> [Vasconi v. Guardian Life Ins. Co., 124 N.J. 338, 349 (1991).]

Concerning the matter before us, the "familiar principles" referenced in Vasconi points us to Rule 4:50-1. This rule "provides for relief from a judgment in [certain] enumerated circumstances." In re Estate of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006). Based on defendant's factual and legal contentions raised in this appeal, we determine the applicable section of Rule

4:50-1 that applies to her request for relief from the final judgment are for "(c) fraud, misrepresentation, or other misconduct of an adverse party; . . . or (f) any other reason justifying relief from the operation of the judgment or order."

There are time constraints for the filing of a motion under this rule. A motion brought under Rule 4:50-1 "shall be made within a reasonable time, and for reasons [under section] (c) . . . not more than one year after the judgment, order or proceeding was entered or taken." R. 4:50-2.

Defendant's motion in the trial court contended plaintiff (1) engaged in fraud by failing to disclose marital funds were being utilized to fund the Trust; and (2) utilized marital assets to purchase his property in Mendham. Accordingly, because defendant asserted fraud, she was required to file her motion within one year after the judgment was entered. The FJD was entered on September 25, 2018 incorporating the MSA dated August 31, 2018. Defendant did not file her motion to "modify" the FJD until May 14, 2024, more than five and one-half years after the FJD was entered. We conclude her motion sounding in fraud is clearly time-barred under Rule 4:50-2.

We next turn to whether defendant satisfied the requirements of Rule 4:50-1(f). "The application of this subsection requires the demonstration of 'exceptional circumstances.'" Schifftner, 385 N.J. Super. at 41 (quoting Court

Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)).  Thus, to  obtain relief under subsection (f), a movant must show that the enforcement of the order "would be unjust, oppressive or inequitable."  Greenberg v. Owens, 31 N.J. 402, 411 (Jacobs, J., dissenting) (citation omitted).  Although relief under Rule 4:50-1 "is granted sparingly," F.B. v. A.L.G., 176 N.J. 201, 207 (2003), the boundaries under subsection (f) "are as expansive as the need to achieve equity and justice." Hous. Authority of Morristown v. Little, 135 N.J. 274, 290 (1994) (quoting Palko v. Palko, 73 N.J. 395, 398 (1977)).

We conclude defendant is not entitled to relief from the FJD under subsection (f) because we determine she failed to file her motion "within a reasonable time," R. 4:50-2, or to show exceptional circumstances.  We base these determination on the reasons expressed by the trial court, which found plaintiff clearly notified defendant that the Stemline stock options would be funding the Trust.  Although defendant claims she was aware of the creation of the Trust, she contends she was unaware plaintiff's Stemline stock options— identified as a marital asset subject to equitable distribution between the parties in the MSA—were funding the Trust.  She points out the MSA required plaintiff to pay for 100% of the children's college costs and plaintiff's transfer of $1 million dollars in stock options, $500,000 of which was her marital portion,

violated the FJD. Contrary to her position, the motion record contains substantial proofs that defendant had knowledge of the Trust's funding source as far back as the date the trust was funded on March 21, 2018.[1]

On that date defendant sent plaintiff a text stating "Send me a schedule of you[r] shared <u>options</u> etc. How much is in trust." (emphasis added). Defendant followed with a text on March 22, 2018 stating, "I need name address and telephone number and confirmation of what you sent to the trust." This was followed by an email exchange between the parties wherein on the same date plaintiff sent defendant an email stating:

> See the email trail below for the details of the gift to the Gionco Descendants Trust yesterday. Stacie Wolff is the Trustee at the First State Trust Company in Delaware and her contact info is shown below. Rob Knorr is the investment manager for the account and he is from Morgan Stanley. Rob's email address is below and his work address is in Florham Park and his home address is in Chester. Rob's kids go to school with our kids. I have also attached files from Computershare, Stemline's stock plan administrator, which houses the <u>options</u> residing in the Trust.
>
> [Emphasis added].

---

[1] We note nowhere in the record does defendant claim she failed to receive her marital portion of plaintiff's stock options in equitable distribution after the FJD was entered as claimed and certified to by plaintiff in his certification filed with the trial court in the motion proceeding.

11

The next morning, defendant replied by email stating, "Please be advised that you probably have a gift tax return filing requirement for 2018 unless you know otherwise."

We conclude, as did the trial court, the above communications clearly provided defendant notice that the Stemline stock options were the funding source for the Trust, contrary to the contentions in her certification to the trial court. In addition, we further point out, defendant was made aware that plaintiff acquired company stock options during the marriage based on (1) the subject texts/email that were exchanged in March 2018; (2) the listing of the stock options as a marital asset in the MSA signed by defendant in August 2018; and (3) at the time she received her equitable distribution of the stock options and restrictive stock options after the FJD was entered as certified by plaintiff. Despite all of the above events, defendant alleges she failed to inquire whether the stock options plaintiff was utilizing to fund the trust were marital assets or for an accounting from defendant of sources funding of the Trust. In addition, we point out the transfer of the stock options were prior to the complaint filing and had already been gifted to the Trust before the date of complaint filing in June 2018 and the certainly before the date the MSA was signed by both parties

in August 2018. The MSA directly addressed the distribution of the stock options at paragraph 53.

The record demonstrates no genuine factual issues were raised by defendant that she did not know, or with reasonable diligence, should have known the stock options plaintiff was using to fund the Trust in March 2018 were marital property that could be subject to equitable distribution. Instead, defendant waited approximately five and a half years to move to reopen the FJD to claim she was wrongfully denied equitable distribution of the stock options. We concur with the trial court's finding that defendant had knowledge of the transfers over five and a half years after the MSA was executed and that the stock options were exercised to fund the Trust. Based on the above determinations, we further conclude defendant failed to satisfy the reasonable time standard of Rule 4:50-2.

We now turn to defendant's claims surrounding the plaintiff's fraudulent purchase of the Mendham property because he allegedly used marital funds. We concur with the trial court's reasoning and determine there is no merit to defendant's contentions. Although at first glance, defendant's argument relying on the fact that the MSA failed to disclose the property seemed to have merit, the subsequent proofs provided by plaintiff including the closing statement and

13

his post-complaint checking account statements clearly show no genuine issues of material fact existed confirming the source of funding for the out of pocket expenses for the purchase of the property were from plaintiff's non-marital post-complaint income.

The record reflects that plaintiff provided the trial court proofs demonstrating that he funded the purchase price and closing costs with a mortgage in addition to an out-of-pocket payment of approximately $32,000. The trial court found the $32,000 to be from post-complaint earnings based on plaintiff's accrued salary between the date of complaint and date of closing and the checks issued from his checking account to purchase the property based on his checking account statements. We conclude the trial court's finding was based on substantial, credible evidence in the motion record and was not an abuse of discretion.

We now address defendant's contention she did not receive her portion of the plaintiff's retirement plan. We determine this argument is without sufficient merit to warrant discussion in a written opinion and affirm for the reasons stated in the court's January 24, 2024 statement of reasons. R. 2:11-3(e)(1)(E). We add that the trial court did not render a decision on the merits concerning this

14

claim and we affirm only the trial court's denial based on procedural grounds and make no determinations concerning the substantive merits of this claim.

We now address defendant's contention that the court abused its discretion by awarding plaintiff counsel fees. We disagree and affirm for the cogent reasons set forth by the court in its written decisions. We add only that the award of counsel fees and costs in matrimonial actions rests in the sound discretion of the trial court. Williams v. Williams, 59 N.J. 229, 233 (1971). An award of fees will not be disturbed in the absence of a showing of abuse. Berkowitz v. Berkowitz, 55 N.J. 564, 570 (1970).

Where case law, statutes, and rules are followed and the court makes appropriate findings of fact, the fee award is entitled to our deference. Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.7 on R. 5:3-5 (2026); J.E.V. v. K.V., 426 N.J. Super. 475, 493-94 (App. Div. 2012).

One consideration in making an award of fees is whether a party acted in bad faith. Borzillo v. Borzillo, 259 N.J. Super. 286, 291-94 (Ch. Div. 1992); Williams, 59 N.J. at 233. Bad faith may be demonstrated by misuse or abuse of process, seeking relief which one knows or should know that no reasonable argument could be advanced in fact or law to support, intentional

misrepresentation of facts or law, and acts of a losing party that are vexatious, wanton or carried out for oppressive reasons. Borzillo, 259 N.J. Super. at 293-94.

Generally, "the party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation." J.E.V., 426 N.J. Super. at 493 (citing Guglielmo v. Guglielmo, 253 N.J. Super. 531, 545 (App. Div. 1992)).

The court must also consider the following factors:

> (1) the financial circumstances of the parties;
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
> (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;
> (4) the extent of the fees incurred by both parties;
> (5) any fees previously awarded;
> (6) the amount of fees previously paid to counsel by each party;
> (7) the results obtained;
> (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and
> (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

We conclude the trial court appropriately considered the factors set forth in Rule 5:3-5(c) and the above cited case law. We further conclude the trial

16

court's finding the requested fees were reasonable is supported by the record and was not an abuse of discretion. Defendant's incomplete filings, the omission of an email chain that undermined her claims of non-consent and lack of knowledge surrounding the creation and funding of the Trust and the lack of sufficient factual evidence to prove her claims concerning the Mendham property all support the court's determinations. In addition, the court's finding that defendant's motion lacked good faith and failed to establish a prima facie case of fraud or breach of the MSA justified an award of fees for the expenses incurred by plaintiff in responding to the initial motion.

We further determine the trial court's denial of defendant's motion for reconsideration and the award of counsel fees to plaintiff for the expenses he incurred to defend the reconsideration motion were also appropriate. We agree with the trial court that defendant's new arguments raised in the motion for reconsideration were not permitted as they were required to be raised in her initial motion. In addition, since we have determined defendant's points on appeal lack merit, the court's denial of reconsideration on those same points was not error.

In regard to the counsel fee award for the costs to defend the reconsideration motion, the record clearly establishes defendant's

reconsideration motion was not based on a good faith legal argument as no reasonable argument could be advanced in fact or law to support the submission of new evidence as a basis for reconsideration and were contrary to the requirements of <u>Rule</u> 4:49-2. We discern no error by the court awarding counsel fees to plaintiff under these circumstances.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1526-24